KALAMAZOO SPRING & AXLE CO. *v.* WINANS, PRATT & CO.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—VALIDITY OF MORTGAGE.

A mortgage given to secure a *bona fide* indebtedness is not invalid by reason of its proximity to a general assignment by the mortgagor for the benefit of creditors, where the mortgagee, at the time of taking the security, had no notice or knowledge that an assignment was contemplated.  Such a transaction does not constitute an illegal preference within the meaning of the assignment law.[1]

2. FRAUDULENT CONVEYANCES—RELATIONSHIP.

A conveyance by an insolvent debtor will not be presumed fraudulent because executed to a relative.

3. CORPORATIONS—EXECUTION OF CHATTEL MORTGAGE.

A chattel mortgage executed by the president and the secretary of a corporation, with the consent of all of the stockholders, is valid.

Appeal from Kalamazoo; Buck, J.   Submitted May 1, 1895.   Decided July 9, 1895.

Bill by the Kalamazoo Spring & Axle Co. and others against Winans, Pratt & Co. and others to set aside cer-

---

[1] For cases involving assignments with preferences, see note to *National Bank of Oshkosh* v. *First National Bank of Ironwood*, 100 Mich. 485.

tain mortgages. From a decree dismissing the bill, complainants appeal. Affirmed.

*Boudeman & Adams (E. M. Irish,* of counsel), for complainants.

*Howard & Roos,* for defendant Winans, Pratt & Co.

*J. W. Osborn,* for defendants First National Bank, Wagner, and Merrill.

*S. F. Master,* for defendant A. J. Mills, assignee.

McGRATH, C. J. Winans, Pratt & Co., a corporation, on June 6, 1893, made an assignment to Alfred J. Mills. On June 5, 1893, it executed three chattel mortgages, one to the First National Bank of Kalamazoo, one to Jacob K. Wagner, and the third to David B. Merrill, and a real-estate mortgage to said bank. The chattel mortgage to the bank was given priority. Wagner was president of the bank; James W. Osborn was its vice president; and Merrill was a director. Wagner, Osborn, and one Kauffer were the discount committee of the bank. James W. Osborn and Alfred J. Mills were partners as Osborn & Mills, and attorneys for the bank. George H. Winans and Ida P. Winans, his wife, and Arthur L. Pratt and Elizabeth P. Pratt, his wife, were the stockholders in Winans, Pratt & Co. All were directors. Winans was president, and Pratt was secretary and treasurer. Ida P. Winans was the daughter of Merrill, and Elizabeth P. Pratt was the daughter of Wagner. The corporation was formed in February, 1891.

This is a bill filed by unsecured creditors, having obtained leave of the court, to set aside the aforesaid mortgages, for the following reasons:

"*First.* Because Winans, Pratt & Co. was insolvent at the time these mortgages were given, and had been insolvent for some time before.

"*Second.* Because the First National Bank of Kalamazoo, Mich., knew the actual condition of Winans, Pratt

& Co. Jacob K. Wagner, its president and manager, knew Winans, Pratt & Co. was perpetrating a fraud upon its creditors. The said Jacob K. Wagner was himself assisting Winans, Pratt & Co. in carrying out this fraud, and therefore the said Wagner cannot, nor can the First National Bank, represented by him, profit by the wrongful act of the said Wagner.

"*Third.* Because the meeting of the board of directors of Winans, Pratt & Co. held on the 3d day of June, 1893, at which meeting a resolution was passed by some of the directors authorizing the execution of the mortgages in question in this suit, was not properly and legally called and held, and notice of the meeting was not served on all of the directors of the corporation, although all of said directors were then in the city of Kalamazoo. Only two of the directors were present at the meeting at which the resolution was passed, there being no quorum present for the transaction of business; and the resolution was there passed by two of the directors, George H. Winans and Arthur L. Pratt; and after being passed by them, and entered on the record book of the corporation, the record of said meeting was subscribed by Mrs. Winans and Mrs. Pratt, at their respective homes. There was no meeting of the board of directors in which they all met together and determined to execute the mortgages in question. The officers of the corporation derived no legal right or authority, by said resolution or otherwise, to make, execute, and deliver in behalf of said corporation any of said mortgages.

"*Fourth.* Because the said chattel mortgages and the said real-estate mortgage are illegal preferences as against our assignment law, and were in fact made at substantially the same time as the assignment; that the transaction of making the mortgages and the assignment was in fact a continuous transaction, and the making of all these instruments constituted but a single transaction, namely, an assignment with preferences; and also claim that the chattel mortgages were void because not legally authorized by the corporation."

It is conceded that Winans, Pratt & Co., at the time the mortgages and assignment were executed, was actually insolvent, and had been for some time previous thereto.

The second proposition is not established by the proofs.

Winans, Pratt & Co. had for years done its banking with the defendant bank. The bank held its individual paper amounting to several thousand dollars. It had also discounted its notes indorsed by Wagner and Merrill, and, in addition, had discounted the bills receivable of the corporation. Although some of the indebtedness, both to the bank and to Merrill and Wagner, was contingent, it is not disputed but that there was, at the time of the execution of the mortgages, a *bona fide* indebtedness to each mortgagee equal to the amount of the mortgage to each person. In December, 1892, the corporation had executed to the bank a real-estate mortgage for $5,000. So far as appears, the bank relied upon the information furnished by the officers of the corporation as to its assets and liabilities. On June 3, 1893, Mr. Pratt came to the bank, and represented to Mr. Wagner that they had paper and other obligations maturing upon that day, and needed $1,000; that they expected some remittances, but must have the $1,000 on that day, and, if they had it, they could pull through. It is evident that the officers of the bank became alarmed. Osborn and Merrill were sent for, and a consultation was had, and the bank finally agreed that it would advance the $1,000, provided the bank was secured by mortgages for the entire indebtedness of the corporation, both actual and contingent, and provided that Wagner and Merrill were also secured. This was consented to by Winans, Pratt & Co. The $1,000 was advanced on that day, and on the same day it was checked out to pay existing obligations. Osborn repaired to his office, and requested his partner, Mr. Mills, to prepare the papers. Mr. Mills dictated the mortgages to the stenographer in the office, and the same were completed at about 5 o'clock of that day, but they were not executed until Monday, June 5th, on which date they were filed. On Monday, Winans, Pratt & Co. received notice of the protest of certain customers' notes amounting to $2,000 and upwards, which had been discounted at the defendant bank, and by the latter forwarded for col-

lection.  They became alarmed, and, in the afternoon of
that day, consulted with Mr. Mills as to what was the
best course to pursue, and the probable effect of the filing
of the mortgages upon their credit.  An assignment was
talked of, and they were advised that it would be neces-
sary to call a meeting of the directors to authorize such
assignment.  They, however, left the office without com-
ing to any conclusion.  A meeting of the directors was,
however, held that evening, and the assignment author-
ized.  On Tuesday morning, June 6th, they again went to
the office of Osborn & Mills, where the assignment was
prepared by Mr. Mills, executed by the president and sec-
retary of the corporation, and filed by Mr. Mills at noon
of that day.  The mortgages were filed at 11:40 p. m.,
June 5th.

It is urged that this is a circumstance showing a con-
certed action, and connecting the execution of the mort-
gages with the assignment.  Mr. Osborn, however, says
that he took charge of the mortgages after their execu-
tion; that he was very busy during the day; that, being
mayor of the city and president of the council, he went
to the council that evening; that the city clerk was clerk
of the council; that, when he arrived at the council cham-
ber, he told the clerk that he had some papers to file, and
wished to be reminded of the fact at the adjournment of
the council; that, immediately after the adjournment of
the council, the papers were filed.  Wagner, Merrill, and
Osborn all testify positively that there was no talk con-
cerning an assignment, and that they had no knowledge
that an assignment was contemplated, until after the
execution and delivery of the mortgages.  Winans testi-
fied that the assignment was not contemplated or
thought of until after the execution and delivery of the
mortgages.  Mills says that nothing was said about an
assignment until Monday afternoon, after the execution
and delivery of the mortgages, and that, so far as he

knew, the assignment was not determined upon until Tuesday morning.

It is more than probable that the relationship between Winans and Pratt and Wagner and Merrill may have induced both Wagner and Merrill to extend a line of credit to the corporation beyond what they would have done in the absence of that relationship, and to place more reliance upon the representations made by the officers of the corporation as to its financial status than they otherwise would have done, and there is testimony tending to show fraudulent conduct on the part of the officers of the corporation with respect to the annual reports filed in January, 1892, and January, 1893; but the testimony does not warrant the inference that either Wagner or Merrill was a party to any scheme to defraud the creditors of the corporation. Fraud or guilty knowledge is not to be presumed from the mere fact of relationship.

It cannot be said upon this record that the execution of the mortgages and the assignment were one collusive transaction, so as to constitute the same an assignment with preferences. It has repeatedly been held that it is lawful for even a creditor who has knowledge of the intention of a debtor to make an assignment to attempt to secure his debt before the execution of the assignment, and the further knowledge on his part that such action will postpone or perhaps cut off the claims of other creditors will not make a mortgage taken as such security fraudulent, even though the creditor also knows that the debtor consents to give it because of an expectation on his part that it will shield him, so long as there is no collusive assistance rendered by the creditor with that object in view. *Sheldon* v. *Mann*, 85 Mich. 265; *Warner* v. *Littlefield*, 89 Mich. 329; *National Bank of Oshkosh* v. *First National Bank of Ironwood*, 100 Mich. 485; *Austin* v. *First National Bank of Kalamazoo*, Id. 613.

The chattel mortgages were executed by the president and secretary of the corporation, and with the knowl-

edge and consent of all the stockholders. *Eureka Iron & Steel Works* v. *Bresnahan*, 60 Mich. 332.

The question of the validity of the assignment is not involved here.

The decree is affirmed, with costs to defendants.

LONG, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.