## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. JOHNSON.

## No. 6822.

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1936.

F. B. Besimer and W. J. Shaw, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellant.

Milton F. Cooney, of Pontiac, Mich. (John L. Estes, of Pontiac, Mich., and Alton P. Shirley, of Detroit, Mich., on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

On July 28, 1932, appellees, Hans P. and Anna B. Johnson, attended the funeral of their son at Hutchinson, Minn. On the same day they were notified by Arthur G. Erickson, agent of appellant, the Equitable Life Assurance Society of the United States, that Mrs. Johnson was the beneficiary under the provisions of an insurance policy issued by appellant upon the life of the deceased son. At the request of Erickson, Mr. Johnson and Louis O. Michot accompanied him to the office of Ralph E. Smith, district manager, in Hutchinson, to consider the settlement of the policy, at which time there ensued a general discussion of annuities. Smith gave Johnson and Michot copies of a booklet which appellant had issued on that subject and marked page 8 thereof, on which was described an annuity contract as follows:

"A Two-Life Annuity is based on the lives of two persons, and the income is payable for as long as either lives. This form is particularly advantageous for a man and wife who have no children, or whose children are no longer dependent upon them. For a man and wife thus situated, a Two-Life Annuity is an admirable opportunity. The income is fixed and sure, and is paid with unfailing regularity. Nor does it matter whether the husband or the wife dies first, for the survivor will continue to receive the full income for his or her lifetime.

"Example: Suppose a man aged 65 and his wife aged 60 desire an Annuity of this kind. In such a case, for the payment of $13,580, in advance, the Society will pay an income of $1,000 per annum for as long as either husband or wife lives."

Michot testified that on that occasion Smith told about a lady who had an annuity similar to the one he recommended for Mrs. Johnson and upon which he (Smith), at her request, had procured money.

On August 1 or 2, 1932, Smith called upon Mrs. Johnson in Hutchinson and discussed with her the subject of annuities, no one being present except Smith and Mrs. Johnson. She stated that she told Smith

she wanted it arranged so that she could draw on the principal in the spring as she intended buying a home, and that Smith then told her that upon an annuity contract she could draw on her money when she needed it.

Mrs. Johnson then went to Willmar, Minn., for a few days, and either there, or a few days later at Hutchinson, Smith delivered to her two checks for $10,000 and $4,000 respectively, and two certificates of deposit for $1,000 each, the proceeds of the son's policy, and accepted from her an application for an annuity. She paid the single premium by indorsing the $10,000 check and it was returned by Smith to the cashier of appellant. The application is copied in the margin.[1]

Mrs. Johnson testified that at the time she signed the application she did not read it and that it was not read to her; that Smith told her she could place the money with the company with the privilege of drawing on the principal whenever she wanted to; that he then repeated the story about the lady who had drawn on a similar contract. Her son, Nels testified that just before the application was signed Mrs. Johnson asked Smith if he would be able to draw on the principal and that he replied, "Absolutely." Smith mailed the application to Mr. Johnson, who signed and

---

[1] EXHIBIT 1

ANNUITY APPLICATION 8.915,210

TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES:

I hereby apply for a Joint and Survivor Annuity ————————————————

Insert "Life," "Refund," "Cash Refund," "Special Refund" or "..year Deferred."

of $716.80 payable in ——— Quarterly ——— Annual, semi-annual, quarterly or monthly installments of $179.20 with a premium of $10,000 payable

(In a Single Sum)  The premium has been paid on the 2nd day of August,

(————————)
(————————)  Insert actual date when purchase money was paid.

Annuity To  1932, or is expected to be paid on the ——— day of ———, 19—.
Be Payable }  TO HANS P. JOHNSON and ANNA B. JOHNSON, jointly and after the first death to the survivor

Insert (print) full name of person to whom Annuity is to be payable.
residing at No. ————————————————
Hutchinson ——————— McLeod ——————— Minnesota.
City or Town            County                 State

Annuity to be Pay- }  OF Hans P. Johnson and Anna B. Johnson, and during the life-
able during the }  time the survivor.
Joint Life-time said }
Hans P. Johnson }  Insert (print) full name of person upon whose life Annuity depends. If a female, also state full maiden name. (If on two lives, fill out two applications.)
residing at Hutchinson ——————— McLeod ——————— Minnesota.
City or Town            County                 State

Danish-American ——————— Male ——————— Married
(Race or Nationality)       (Sex)       (Single, Married or Widowed)
whose principal occupation is that of—————————Retired—————who was born at
State nature of business in detail.
——————— Denmark ————— on the 22nd day of August, 1869, and whose age at last
Place    County    State or Country.
birthday was therefore 62 years.

(Proof of age to accompany this application except for Special Refund Annuity.)
Dated at Hutchinson, Minn., August 2nd, 1932.

Enter here any special }
instructions: }  ANNA M. BROWN JOHNSON,
                    Signature of Purchaser.
Signature of Purchaser. }  HANS PETER JOHNSON,
                    Signature of person upon whose life Annuity depends.
                 ARTHUR G. ERICKSON,
                 RAYMOND SMITH,
                    Soliciting Agent only should sign here.
                    (If two or more persons actually engaged in soliciting this application, each should sign his full name and designate his proportionate interest herein if shares are not equal. A firm name must not be signed on this line.)
                 SHEA
                 Agency or Agencies.

NOTE.—Life Annuities (including Refund, Cash-Refund and Special Refund Annuities) are payable annually, semi-annually, quarterly or monthly. If annually, the first instalment will be paid one year after the premium has been paid; if semi-annually, six months; if quarterly, three months; if monthly, one month thereafter. Deferred annuities are payable monthly with the first instalment due one month after the deferred term ends. For Survivorship Annuity or Endowment Annuity use Standard Life Insurance Application blank only. For Retiremet Annuity use special application bank.

returned it. After signing the application, Mrs. Johnson left Hutchinson, and on her return about the 20th or 25th of October she found the annuity contract awaiting her. Its terms were identical with those of the application. They provided that in consideration of the single premium of $10,000 paid by appellees the appellant agreed to pay to them jointly during their lifetime and then to the survivor during his or her lifetime a quarterly annuity of $179.20. Neither the application nor the contract provided for any refund of the principal sum of $10,000.

On November 3d Mrs. Johnson wrote a letter to Smith in which she said: "I have been away for a few weeks. Just came home. I have looked my papers over on the insurance my boy left me. I don't like it the way you have fixed it. I am sure I can do lots better than that with it, so I would like to have the $10,000 at once. I am well able to take care of it. You know, I asked you before if I could draw any money when I wanted it and you said absolutely, that was mine, I could get it any time, and that it was what I wanted. * * *" Further correspondence ensued, but it is sufficient to say that appellant declined to return the $10,000. There is also evidence tending to show that in December Smith stated to Michot that he resented any insinuation that he had misrepresented the policy to Mrs. Johnson, but that according to the way she acted about it she certainly did not get what she wanted.

We think that the above is a fair résumé of the evidence introduced in behalf of appellees. Appellant having failed to return the money, appellees brought suit to recover it and were awarded a judgment.

Appellant complains (1) of the denial of its motion to transfer the cause to the equity side; (2) of the introduction of parol testimony to contradict the terms of the written application; (3) of the denial of a directed verdict; and (4) of the denial of certain requested instructions.

The case was tried upon the theory that it was a suit for the recovery of money obtained through misrepresentation, fraud, and deceit.

■ First. It was not error to deny the motion to transfer the cause to the equity side. Appellees did not seek equitable relief. They treated the contract as rescinded and sought a recovery of the $10,000 upon averments of fraud, misrepresentation, and deceit. This was clearly an action at law. See Hey v. Duncan, 13 F.(2d) 794, 796 (C.C.A.7); Young v. Main, 72 F.(2d) 640, 642 (C.C.A.8); Black on Rescission and Cancellation, vol. I, § 24.

■ Second. It is urged that the evidence educed by the following questions and answers was prejudicial:

"Q. What did he (Smith) say? A. Well he told me about how I could draw on my money when I needed it.

"Q. What did Mr. Smith say in the house on that particular day pertaining to the annuity contract terms? A. Well we talked about I wanted the money fixed so I could draw on it in the spring; that I intended buying a home, and I wanted my money fixed so that I could draw on the principal at that time.

"Q. What did he say? A. He said I could."

It is said that this parol evidence contradicted the written application. We think it was admissible. It tended to support appellees' theory of fraud in the execution of the application, and parol evidence is always permissible to show fraud in the execution of contracts. Nor was it error to admit in evidence the letter of Mrs. Johnson. This letter was relevant as tending to show that after the annuity contract was brought to her attention she rescinded it as a prerequisite to her demand for the return of the money.

Third. We think appellant was entitled to a directed verdict. The application was made upon one of the standard forms used by appellant and was furnished by Smith. There is no evidence that Smith represented that this application contained any provision that appellees would be entitled to draw upon the $10,000.

From the testimony of Mrs. Johnson, her son Nels, and Michot, standing alone, it might be inferred that Mrs. Johnson was induced to enter into the transaction by the statements of Smith that she would be entitled to the privilege of drawing upon the $10,000, but the contents of the application and the booklet (both of which were admittedly furnished by Smith), together with the failure of appellee Hans Johnson to testify at all, tend to weaken any such conclusion.

■ In the absence of evidence to the contrary, it must be assumed that Hans Johnson read the application before he signed it. Moreover, Mrs. Johnson was in full

possession of all her faculties. It is hornbook law that it was her duty to read the application. Her failure to do so was negligence, and in some jurisdictions she would be estopped in an action at law to say that she was induced to sign the application by misrepresentations of Smith. Pacific Mut. Life Ins. Co. of Calif. v. Webb, 157 F. 155, 156, 13 Ann.Cas. 752 (C.C.A.8); Chic., St. P., M. & O. R. Co. v. Belliwith, 83 F. 437, 440 (C.C.A.8); Hickman v. Sawyer, 216 F. 281, 283 (C.C.A.4). Contra Wagner v. Nat. Life Ins. Co., 90 F. 395 (C.C.A.6). But we need not determine the question of estoppel.

The utmost that may be said is that whether Mrs. Johnson signed the application neglecting to read it, or by reason of the intentional misrepresentations of Smith, is left in doubt and uncertainty. Fraud is not to be presumed and the burden of establishing it was upon appellees. They were not required to establish it beyond a reasonable doubt (Oriel v. Russell, 278 U. S. 358, 364, 49 S.Ct. 173, 73 L.Ed. 419), but something more is required than the mere weight, or preponderance, of the evidence. It is essential that the evidence should be clear, unequivocal, and convincing. It must be cogent and leave the mind well satisfied that the allegations are true. Maxwell Land Grant Case, 121 U.S. 325, 381, 7 S.Ct. 1015, 30 L.Ed. 949; Chicago, St. P., etc., R. Co. v. Belliwith, supra; Blakeslee v. Wallace, 45 F.(2d) 347, 350 (C.C.A.6); In re Locust Bldg. Co., 299 F. 756, 765 (C.C.A.2). Any other rule would lay written instruments open to captious challenge and would reduce them to scraps of paper.

It has been definitely settled that a federal judge may not over a motion for a directed verdict submit a case to a jury upon a scintilla of evidence. Upon such a motion he may not settle a conflict in the evidence upon any material issue, but is charged with the duty of determining, not whether there is literally no evidence, but whether there is any substantial evidence upon which the jury can properly and lawfully return a verdict in favor of the party who has the burden of the proof. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819; Hardy-Burlingham Min. Co. v. Baker, 10 F. (2d) 277 (C.C.A.6); Chic., St. P., etc., R. Co. v. Belliwith, supra. Laying aside all countervailing evidence, with which we are not here concerned, and considering the verdict from the standpoint of the evidence appellees were required to educe to support it, we think it does not have sufficient foundation upon which to rest. The evidence does not have that convincing probative force required to set aside written agreements. We think the case is a proper one for the application of the rule that whenever the evidence is such that a verdict for plaintiff should in the exercise of sound discretion be set aside, a verdict for defendant should be directed. Grand Trunk Western R. Co. v. Holstein, 67 F. (2d) 780, 783 (C.C.A.6).

Finally, it is urged that the following requests should have been submitted to the jury:

"No. 1. The Court instructs you that the general rule of law is that fraud, when charged, must be made out by a preponderance of evidence so clear and strong as to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud or act in bad faith.

"No. 2. The Court further instructs you that fraud is never presumed, and the law presumes, in the absence of evidence to the contrary, that the business transactions of every one are carried on in good faith, and any one who alleges that such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the burden of proving such fact by clear and convincing proof."

Upon the assumption that the court was correct in submitting the case to the jury, there is merit in this assignment. Both of these requests, as indicated above, embody a correct statement of the law. They were highly material to the substantial rights of appellant and we find nothing in the charge equivalent thereto. In the event that the evidence upon the second trial should require the case to be submitted to the jury, the substance of these requests should be embodied in the charge.

The case is reversed and remanded for a new trial.