David A. Christopher, of Cleveland, Ohio, for appellants.

Arthur A. Neiger, of Cleveland, Ohio, for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Appellant, John Carl Marshall, had worked for the Brooks Company, an old, established printing and lithographing company of Cleveland, Ohio, for forty years; and as he was able bought of its closely held stock. He became the holder of Certificate No. 215 for sixty shares on December 22, 1922; and of Certificate No. 237 for sixty-five shares on August 8, 1924.

He seems also, at some time, to have purchased another twenty shares which he gave to his wife, appellant Grace W. Marshall, in 1934, when she complained that ten shares of the preferred stock, which she had owned, had ceased to pay dividends. She testified that he said, "well, he would give me twenty shares of common stock and maybe that would make me feel a little happier."

She further testified that,—"my husband never accumulated any debts that he could possibly avoid * * * we never owed any one very long." There was one exception. When Marshall made the purchase of stock in 1924, he borrowed $9,280.00 from Central National Bank and put up the 125 shares of the Brooks Company stock as collateral.

**MARSHALL et al. v. GELFAND.**

**No. 7503.**

Circuit Court of Appeals, Sixth Circuit.

June 9, 1938.

Rehearing Denied Oct. 12, 1938.

On January 1, 1932, the balance of this loan was $5,350.00. Thereafter Marshall made principal payments thereon of $350.00 in 1931, $170.00 in 1932, and $80.00 in 1933. No principal payments were made after 1933.

In the fall of 1931, Marshall sustained an injury in an accident, in settlement for which an insurance company paid him $1,500.00 on January 28, 1932. The check therefor he endorsed to his wife, who deposited it to her credit in the Society for Savings, Cleveland, Ohio. On May 12, 1932, her account was closed and the $2,464.80 to her credit was deposited in the name of her daughter, appellant Ruth M. Ketchum, Mrs. Marshall retaining her right to draw upon the account.

On August 9, 1935, the bank recovered a judgment of $5,657.50 on Marshall's indebtedness to it. When Marshall filed his petition in bankruptcy in November 1935, he scheduled no assets and but one debt, that of the bank.

On December 31, 1935, appellee, Trustee in Bankruptcy of appellant, John Carl Marshall, filed his bill against appellants to set aside the transfers by Marshall to his wife of the $1,500.00 on January 28, 1932, and of the twenty shares of stock in 1934, upon the ground that they were fraudulent and void under Ohio General Code, Sections 8618, 11104 and 11105. The trustee, appellee, claimed that Marshall was insolvent in 1932 and that the transfers were made to circumvent creditors, and the District Court so held. We take the contrary view.

In passing it may be noted that Mrs. Marshall was an agent for a life insurance company and out of her earnings made certain contributions to household expenses. She asserted that the $1,500.00 paid to her was reimbursement therefor. We do not consider it necessary to go into this.

The charge was one of fraud and we do not think it was supported by the unequivocal and convincing evidence which the law requires. See Equitable Life Assur. Soc. v. Johnson, 6 Cir., 81 F.2d 543, 547. It was not sufficiently shown that the transfers were made in contemplation of insolvency. The proof centers in the evidence of the financial condition of the Brooks Company as it reflected upon the value of Marshall's stock which the bank held as collateral security for his loan and the knowledge thereof by Marshall and his wife.

The Brooks Company had been in business sixty-two years. It was operating in a building only ten years old which in December 1932 was valued on its books at $276,614.46. Its land then had a book value of $160,164.00. Current liabilities were $104,200.27. In 1932, it was indebted to the bank, Marshall's creditor, *on open account* in the amount of $63,000.00. It sustained losses on operations in 1931, 1932 and 1933. In November 1934, when its loan from the bank on open account was $47,000.00, the bank made a new loan of $38,000.00 and combined the two into a mortgage loan. On April 30, 1936, this loan had been reduced to about $70,000.00

The Brooks Company's capital stock was 35,000 shares of par value $100.00; and 100,000 preferred, paying 8% cumulative. No dividends were paid on either after 1930. The stock was held almost exclusively by company officials or members of the Brooks family. There was only one sale of stock subsequent to January 1931. This was in April 1933, when 35 shares of common stock passed between officers of the company at $20.00 per share. The record indicates that this was in the nature of a forced sale because the seller was being pressed to pay his own indebtedness and was hardly the type of sale from which the market value of the stock could be determined. Certainly the Brooks Company did not consider itself insolvent because in 1932 it carried its stock on its books at $142.00 per share and as late as December 1935 at $130.00 per share. We recognize that there may be a vast disparity between book value and real value but we are not required to determine what its real value was. Our question is whether Marshall at the time of the transfers was aware or should have been aware of his own insolvency.

Under the circumstances we think that Marshall's endorsement of the check for $1,500.00 to his wife hardly carries a suggestion of fraud. The subsequent transfer of the money to the Ketchum account, taken alone, might be open to suspicion, but there are circumstances sufficient to offset any presumption of fraud. These transfers were made at a time when only the 1931 dividend on the Brooks Company stock had been passed. Evidently this did not register deeply with Marshall because he continued to pay on the principal of his indebtedness to the bank, i. e., continued to pay for his stock, until 1933. It does not seem

likely that he would have done so had he thought the stock greatly depreciated in value. Here it is well to note that so far as the record shows, the bank still retains Marshall's stock as collateral for his indebtedness.

The one sale of the Brooks Company stock at $20.00 per share in 1933 indicates nothing upon the question of bad faith, for this was about a year after these transfers of the money. There is no evidence that either Marshall or his wife knew of these sales even in 1934. A further bit of significant evidence is that in both 1932 and 1934 the bank was still loaning money to the company on open account.

As for the stock transfer, there is little or nothing in addition to what has been said from which to infer fraud. Mrs. Marshall testified that she never supposed he was insolvent until he filed his petition in bankruptcy. This is credible because he was careful in business and only the one claim was filed against his estate.

The decree is reversed and the bill dismissed