LACKAWANNA PANTS MFG. CO. et al. v.
WISEMAN.
No. 9257.

Circuit Court of Appeals, Sixth Circuit.
Feb. 9, 1943.

Rhodes & Rhodes, of Detroit, Mich., for appellants.

Field, Lovejoy & Kaplan, of Detroit, Mich., and Harvey Bielfield, of Hamtramck, Mich., for appellee.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellants filed a reclamation petition against assets of the bankrupt estate in the hands of the receiver, based upon a recorded purchase money chattel mortgage executed more than one year prior to the filing of the bankruptcy petition. The receiver contested, the referee held the mortgage invalid, and the District Court affirmed. The mortgagee and the assignee of a part interest therein, appealed.

The bankrupt corporation was wholly owned and controlled by the four Kahrnoff brothers. The mortgagee was originally one Koppelman who assigned the mortgage to the Lackawanna Pants Company of which he is the senior partner, the partnership later assigning an interest therein to the appellant Davidson as will later appear. The circumstances leading to the execution of the mortgage follow. Prior to the organization of the bankrupt corporation the Kahrnoff brothers were doing business at the same address under the style "Raymond's Inc." and "Raymond's Cut Rate." Raymond's Inc. was a corporation in which all of the brothers were interested. Raymond's Cut Rate was owned and operated by Harry, one of the brothers, individually. In 1938 both concerns were in financial difficulties and executed trust mortgages for the benefit of creditors. Bankruptcy proceedings were started against Harry Kahrnoff, and a receiver was appointed. By agreement be-

484

tween the bankruptcy receiver and the trustee under the mortgage of Raymond's Inc., the trustee foreclosed upon the latter's trust mortgage and offered the property of both insolvents for sale simultaneously. Together the stocks had cost $18,609.73 and their total appraised value was $11,131.65.

The largest creditor of the Kahrnoffs was the Lackawanna Pants Company to which they owed $5,795.32. Part of this indebtedness was claimed to have resulted from a delivery of goods on consignment for return of which a replevin action had been brought. Koppelman attended the sale on behalf of Lackawanna with the expectation of recouping its losses if he could buy the stocks cheaply enough. The assets were sold to him and one Marcus, a stockbuyer, for $7500, the money for the purchase being furnished by Koppelman. Almost immediately thereafter Koppelman, upon the alleged assertion of Marcus that he was unable to finance his share of the purchase, paid Marcus $750 for his interest.

The Kahrnoffs desired to remain in business, but having no money with which to repurchase the stocks Koppelman agreed to resell to them without any down payment, provided the price was made high enough to cover not only Koppelman's purchase price and expenses but also the previous indebtedness of the Kahrnoffs to Lackawanna. The price finally agreed upon was $13,275. A corporation was promptly organized to take title under the style "Monroe Merchandising Company," to which Koppelman gave a bill of sale and from which he received a promissory note secured by chattel mortgage upon the stocks. The mortgage obligated the corporation to pay $250 a week upon the principal, without interest, and was to extend both to after-acquired property of the mortgagor and to any further advances or sales to be made to it by the mortgagee. The note required the weekly payments to be made on Monday of each week, but the mortgage required checks to be mailed to Koppelman each Sunday.

The sale of the Kahrnoff stocks took place on Thursday, July 7, 1938. The mortgage was executed in the afternoon of Friday, July 8, and recorded the following Monday, July 11. It purported to have been authorized at a directors' meeting of the corporation on Friday. Of three directors two were present, and agreed to the execution of the mortgage. The third director, one Harry Cohen, had no notice of the meeting, nor did he waive it. Shortly after the execution of the mortgage Koppelman assigned it to Lackawanna. The Kahrnoffs promptly reopened their store and one of their first acts was to place an order with one Baker for $33 worth of neckties. Baker received the order on July 8 and at once set aside the merchandise. It was not, however, delivered to the bankrupt till the 11th, after the recording of the mortgage. Baker was paid in full for the shipment before he had extended further credit to the corporation.

For several months the bankrupt made its weekly payments to the assignee of the mortgage, but in 1939 began to default. Under pressure from Lackawanna it sought additional capital and finally induced appellant Davidson, related to one of the Kahrnoffs, to come to its aid. This Davidson did by purchasing from Lackawanna at 10% discount, a $3,275 interest in the mortgage, secured by an assignment. Later Davidson purchased a further interest in the mortgage by two payments to Lackawanna of $500 each. His assignment was, however, not recorded. The corporation was finally forced into bankruptcy, its receiver refused to recognize the mortgage lien and opposed allowance of the reclamation petition.

The referee sustained the objections of the receiver on numerous grounds: (1) That the mortgage was not properly authorized by the corporation; (2) that it was void as calling for performance on Sunday; (3) that it was not made in good faith and so was a fraud on creditors; (4) that it has been fully paid; and (5) that it was invalid as to Baker and so void as to all other creditors. Over exceptions by the appellants, the District Court affirmed on all grounds of invalidity.

The third ground alone gives us difficulty. The others may be dismissed, without extended discussion, as failing to disclose infirmity in the mortgage. It is true that the Michigan Corporation Law, Act 327, Public Acts of 1931, §§ 10, 13 and 39, provides that the business of a corporation must be carried on by its directors. Zachary v. Milin, 294 Mich. 622, 293 N.W. 770; Doyle v. Mizner, 42 Mich. 332, 3 N.W. 968; Broughton v. Jones, 120

Mich. 462, 79 N.W. 691. But where no director or stockholder objects, and there has subsequently been tacit approval of the action of the corporation, the validity of its acts may not by others be questioned. Kalamazoo Spring & Axle Co. v. Winans, Pratt & Co., 106 Mich. 193, 64 N.W. 23; Nevada Nickel Syndicate v. National Nickel Co., C.C.Nev., 96 F. 133. The Michigan Statute, § 9078, C.L.1929, § 1, provides that no person shall do any manner of labor, business, or work on Sunday. If the mailing of a check, as provided in the mortgage, comes within the condemnation of this statute, notwithstanding the requirement in the note for Monday payments, this provision is separable and without it the contract is still complete. We think it should not be stricken down on this ground. The referee's finding that the mortgage was fully paid, rests upon premises that it was valid only to the extent of the $7500 paid by Koppelman at the sale, that it did not secure future advances, and that Davidson's payments were on behalf of the bankrupt and did not buy a share in the mortgage. There is no soundness in the first premise unless the mortgage was fraudulently executed, in which case it is wholly invalid. We have no doubt that a mortgage securing future advances may be assigned, with the assignee succeeding to all rights under its covenants. The conclusion that Davidson's payments to Lackawanna were gratuitous and without intent that he be secured by the mortgage, is wholly lacking in support on the record. While the order given to Baker was prior to the recording of the mortgage, delivery took place after its filing and Baker has been paid. While the Uniform Sales Act, Mich.C.L. § 9458, provides that title passes when an order for merchandise is given, nevertheless it has been held that the date of delivery determines when credit is given, since before that time the vendor can always protect himself, Friedman v. Sterling Refrigerator Co., 4 Cir., 104 F.2d 837. The instrument not being void as to Baker is not void as to all other creditors under the rule applied in Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198.

Without specifying which of the federal or local statutory provisions cited by him are applicable, and without particularizing evidence to bring the mortgage into conflict with one or more of the cited statutes, the referee held the mortgage to have been neither given nor accepted in good faith and a fraud upon the creditors of the bankrupt. Insofar as he relied upon § 67, sub. d(2) of the Federal Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2), which declares every transfer made and obligation incurred by a debtor within one year prior to the filing of the bankruptcy petition, fraudulent, it is now expressly conceded by the receiver that the section has no application because the mortgage was executed more than one year prior to bankruptcy. The state law upon which reliance was placed includes §§ 13434, 13396, 13397 and 13398, C.L.1929.

Section 13434 provides that every conveyance or assignment of any estate, made with the intent to hinder, delay or defraud creditors, shall be void. Since at the time of the execution of the mortgage the bankrupt had no creditors, save the mortgage creditor himself, the section clearly has no application. Section 13396 (§ 5), provides that every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands, after the conveyance, is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of the business or transaction without regard to his actual intent. Assuming, for the moment, that the mortgage to Koppelman was given without fair consideration, its execution did not leave the mortgagor with an unreasonably small capital. The mortgagor had no capital to begin with, and so parted with nothing. The mortgage was a purchase money mortgage, and if it had any effect upon the capital of the bankrupt it was to create for it an equity, highly speculative, no doubt, but nevertheless an equity measured by the value that might remain in the merchandise after payment of the mortgage. The instrument did not come within the condemnation of § 13396. Section 13397 (§ 6) provides that every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors. Again assuming that the mortgage was without

fair consideration, the record is silent as to any intention or belief of the mortgagor, its officers or directors, that they would incur debts beyond the ability of the corporation to pay as they mature. Nor are there facts or circumstances from which such intention or belief may reasonably be inferred. The statute concerns itself with the intention or belief of the person making the conveyance or entering into the obligation, and is not at all concerned with the intention or belief of the grantee or mortgagee.

We come then to § 13398 (§ 7), which provides that every conveyance made and every obligation incurred with actual intent as distinguished from intent presumed in law to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. It will be observed that this section is not limited to the intent of "the person making the conveyance or entering into the obligation," and we may assume that construed broadly it reaches a conveyance by which the grantee may intend that the grantor may defraud his creditors. It is limited, however, to actual intent as distinguished from intent presumed in law. Doubtless such intent may be derived from circumstances reasonably demonstrating it even in the absence of specific proof. To ascertain the specific grounds upon which the referee concluded the mortgage to be fraudulent, based upon an actual intent either of mortgagor, mortgagee or both, to defraud future creditors, we have given careful consideration to the record, the report of the referee and its pro forma approval by the court. The referee was undoubtedly of the view that the whole transaction, beginning with Koppelman's purchase of the Kahrnoff assets, was tainted with fraud by reason of the payment made by Koppelman to Marcus for his interest therein, and also of the view that the consideration for the execution of the mortgage was so grossly inadequate as to be a badge of fraud.

It may be conceded at once that the participation by Marcus in Koppelman's purchase and the subsequent sale of his interest in the assets to Koppelman, reasonably gives rise to suspicion that Marcus was not bona fide a party to the purchase. The referee concluded that Marcus was paid to stifle bidding and not for an interest in the bankrupt's assets.

Under the law great weight must be accorded to the findings of the referee when they are affirmed by the court, and they should not be set aside except upon clear evidence of mistake. Kowalsky v. American Employers Insurance Co., 6 Cir., 90 F.2d 476. Nevertheless, it is settled law that fraud is not to be presumed and that something more is required than the mere weight or preponderance of evidence. To establish fraud it is essential that the evidence should be clear, unequivocal and convincing. It must be cogent and leave the mind well satisfied that the allegations are true. Equitable Life Assurance Society v. Johnson, 6 Cir., 81 F.2d 543, 547. As we said there, "any other rule would lay written instruments open to captious challenge and would reduce them to scraps of paper." Michigan law is substantially in accord. The cases hold that fraud will not be presumed on slight circumstances, but must be clearly proved by satisfactory evidence. They are collected in 9 Callaghan's Michigan Digest 195, and need not specifically be cited. Manifestly mere suspicion of ulterior purpose is not enough upon which to set aside a contract on the ground of fraud, but even if Koppelman's purchase of the Kahrnoff assets at the auction was in some manner so tainted, there was no fraud upon the receiver or the creditors by him represented. This much the appellee concedes, insisting, however, that the referee was warranted in giving the matter consideration as within a succession of circumstances tending to show a general fraudulent purpose in the ultimate sale of the assets to the bankrupt and in the execution by the bankrupt of the mortgage. This readily may be granted, without recognition of the circumstance as rising to the dignity of that clear proof of fraud required by the decisions. The referee assumed from Koppelman's testimony that he was prepared, if necessary, to pay at least $100 to any party to prevent him from bidding too high, and that he believed that Marcus divided the $750 among several people that he stopped from buying. Careful analysis of Koppelman's testimony, however, clearly demonstrates that the referee's assumption was erroneous. Koppelman denied categorically that he paid Marcus for stifling the bidding; asserted that he and Marcus expected to run a sale and make a profit thereat; and the testimony, to which the referee referred, was merely a crude explanation of his under-

standing of what is sometimes done at auction sales.

■ In assuming that the mortgage was not given for a fair consideration and so constituted a badge of fraud, the referee was undoubtedly of the view that the $7500 paid by Koppelman at the auction, represented the fair value of the assets, and also that there was something clearly unethical, if not, in fact, illegal, in the Kahrnoffs' undertaking, through the medium of the bankrupt corporation, to make Lackawanna whole upon their antecedent debt. Realistic consideration must, however, be given to the fact that Koppelman purchased the Kahrnoff assets at forced sale; that he sold them to a purchaser having no capital without a down payment; that they had cost originally upwards of $18,000 and had been appraised as having a fair value of over $11,000, and that he had released his claim on the allegedly consigned shipment. The Kahrnoffs had a going business at an established location. It may well be that the purchase from Koppelman was more advantageous than to restock after delay, even if that were possible, without capital or credit, and Koppelman was their only source for additional merchandise. While excessive price is a badge of fraud, Louden v. Vinton, 108 Mich. 313, 66 N.W. 222, it is not conclusive. Timmer v. Pietrzyk, 272 Mich. 238, 242, 261 N.W. 313, 314. There it was said: "Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and the number concurring in the same case." See also Bentley v. Caille, 289 Mich. 74, 78, 286 N.W. 163. There are no other indications of a fraudulent intent, either on the part of the bankrupt or of Koppelman. The criteria additionally catalogued in the receiver's brief, are wholly without substance. To this must be added the observation that the reiterated insistence that the payment to Marcus was a consideration for stifling competition, conflicts with the view that Koppelman paid fair value for the mortgaged assets.

■ Taking the record as a whole, we are constrained to hold that notwithstanding facts furnishing grounds for suspecting the good faith of mortgagor and mortgagee, there is no clear proof of actual intent to defraud future creditors and of existing creditors, there were none. There is no evidence of misrepresentation or fraudulent concealment, and while the bankrupt carried the assets upon its books at a valuation of $19,000, this was the cost of the merchandise, and it is neither proved nor claimed that any statement of assets or liabilities was ever made to or sought by creditors. We are not advised of the indebtedness subsequently incurred. The mortgage was on record and so notice to the world of the Lackawanna lien not only on the purchased stocks but on all after-acquired property, and there is no claim of infirmity in the recording. The mortgage was not invalid upon any of the grounds alleged. The reclamation petition should have been allowed in respect to the amount actually owing thereon to each of the appellants.

Reversed and remanded for further proceedings in conformity herewith.