In re James D. OSBOURNE, Debtor.

Kyle A. COOPER, Trustee of the Estate of James D. Osbourne, Plaintiff,

v.

James D. OSBOURNE and Barbara K. Osbourne, Defendants.

Bankruptcy No. 3–88–01643(11).
Adv. No. 3–88–0063.

United States Bankruptcy Court,
W.D. Kentucky.

Sept. 29, 1989.

Bruce D. Atherton, Louisville, Ky., for co-defendant.

James R. Higgins, Jr., Louisville, Ky., for Coplay Cement Co.

Wallace H. Spalding, III, Louisville, Ky., for James D. Osbourne.

Joseph J. Golden, Asst. U.S. Trustee, Louisville, Ky.

## MEMORANDUM OPINION

HENRY H. DICKINSON, Bankruptcy Judge.

This Chapter 7 adversary proceeding is before the Court on the plaintiff's motion for summary judgment pursuant to Fed.R. Civ.Pro. 56 & Fed.R.Bankr.Pro. 7056. The motion arose from an adversary complaint filed on August 11, 1988 by Coplay Cement Company (hereinafter "Coplay") to set aside as a fraudulent conveyance, James Osbourne's (hereinafter "Osbourne" or "debtor") transfer of his one-half interest in real property to Barbara Osbourne, his wife, pursuant to 11 U.S.C. § 548.

During a pre-trial conference, on February 14, 1989, Coplay tendered its motion for summary judgment. Upon the request of debtor, the Court ordered the parties to complete discovery and file memoranda in support of their respective positions. Several months later and again upon the debtor's request the Court heard oral arguments on June 5, 1989, by both parties, on the plaintiff's motion for summary judgment. At the conclusion, the Court once again ordered the parties to tender any further response and thereafter took the matter under submission.

A brief summary of the facts follows. Mr. James Osbourne was doing business as Harrodsburg Ready Mix and Supply Company and S. & M. Trucking Company. Prior to May 27, 1987, Osbourne incurred substantial debt in the amount of $79,083.92 owing to Coplay. As part of a debt restructuring agreement, Osbourne executed a promissory note and security agreement with Coplay on May 27, 1987, agreeing to make monthly installments on the debt and

further agreeing to make timely payments on all current cement purchases. Osbourne defaulted thereafter failing to maintain timely payments on current purchases and thereby increased his outstanding debt with Coplay to the approximate sum of $170,000.

Subsequently, Coplay filed suit against Osbourne on April 22, 1988 in Jefferson Circuit Court, Civil Action No. 88–CI–03247. The case was assigned to a commissioner of Jefferson Circuit Court wherein on June 10, 1988 the commissioner found that Coplay was entitled to a Writ of Possession based upon the security agreement between Coplay and Osbourne, as well as on the substantial outstanding debt. However, the Writ was never executed by Coplay due to the fact that Osbourne represented to Coplay he was in the process of selling the on-going business for a price that would satisfy Coplay's debt. The sale never commenced and soon thereafter Osbourne filed for Chapter 11 relief on June 30, 1988. The Chapter 11 case was later converted, voluntarily, to a Chapter 7 liquidation on February 9, 1989.

In Osbourne's Chapter 11 and later Chapter 7 Statement of Affairs, debtor disclosed that on March 15, 1988, just three months prior to filing bankruptcy, he transferred his one-half interest in the marital residence located at 401 Kinnaird Lane, Louisville, Kentucky to his wife Barbara Osbourne. The language in the deed provided that the transfer was "for love and affection" James Osbourne held for Barbara Osbourne. Mrs. Osbourne admitted she gave no consideration in the form of property or money in exchange for debtor's one-half interest. In an attempt to explain the pre-petition transfer, Mr. Osbourne stated that the transfer was prompted by the parties contemplation of divorce. However, the parties remained married and continued to live together in the marital residence.

The above-styled adversary proceeding was subsequently filed by Coplay,[1] alleging

that Mr. Osbourne transferred his one-half interest to his wife within one year of the filing of a petition in bankruptcy with the intent to hide it from his creditors. Furthermore the plaintiff alleged that he transferred his interest for less than its reasonably equivalent value at a time when he was insolvent. Hence the transfer, the plaintiff asserts, should be set aside as a fraudulent conveyance pursuant to § 548(a)(2)(A) and (a)(2)(B).

Mr. Osbourne on the other hand contends that this Court is powerless to void the transfer between James and Barbara Osbourne because this Court is bound by Kentucky property law which prevents a creditor of one spouse from reaching property held by the debtor and his wife as tenants by the entirety. Hence it serves no purpose for the Court to avoid a transfer of exempt property. Accordingly, Osbourne moved the Court to dismiss the complaint as moot. Barbara Osbourne also moved the Court for summary judgment against Coplay adopting, in full, James Osbourne's grounds and basis.

Motions for summary judgment are properly sustained only where there exist no genuine issues of material fact, thereby entitling a party to judgment as a matter of law. The burden of establishing the absence of factual dispute is on the moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts in this case are not in dispute and therefore the issues before the Court are ripe for decision.

We begin our analysis of the first issue dealing with whether a pre-petition transfer of debtor's one-half interest in the marital residence to a non-debtor spouse is avoidable by the Trustee pursuant to 11 U.S.C. § 548(a).

---

**1.** Originally, Coplay filed this adversary proceeding against Osbourne while the case was still a Chapter 11 proceeding. On February 7, 1989, the case was converted to a Chapter 7, and Kyle Cooper, Trustee, was substituted as plaintiff.

Under section 548(a)(1), the Trustee alone is entitled to avoid any transfer of the debtor's property made within one year before the filing of a petition if such transfer was made voluntarily or involuntarily with actual intent to hinder, delay or defraud creditors. To avoid a transfer pursuant to § 548(a)(1), the Trustee must prove the following: (1) a transfer of an interest of the debtor's property or the incurring of an obligation; (2) made on or within one year of petition date; and (3) with actual fraudulent intent.

The meaning of "transfer" is defined by the Bankruptcy Code in section 548(d) which provides that a transfer is made when the transfer is perfected or valid against a subsequent bona fide purchaser. The subsection further provides that if the transfer is not perfected before the commencement of the bankruptcy, the transfer is deemed to be made immediately before the date of the filing of the petition. 11 U.S.C. § 548(d).

■ In the present case, this Court has no difficulty finding that Osbourne transferred his one-half interest in the marital residence to Barbara Osbourne within one year of filing the bankruptcy petition. A deed evidencing the transfer between James and Barbara Osbourne was witnessed by a notary public and subsequently recorded and filed at the Jefferson County Clerk's Office. Hence the first two elements have been satisfied. The third element of actual fraudulent intent, however, is the crucial and questionable element in this case. The Trustee must prove by clear and convincing evidence that the debtor actually intended to defraud his creditors at the time the transfer was made. *Lackawanna Pants Mfg. Co., v. Wiseman,* 133 F.2d 482 (6th Cir.1943). Fraudulent intent however is rarely susceptible to direct proof. *In re Saphire,* 139 F.2d 34 (2d Cir.1943). Therefore the courts have developed circumstances or "badges of fraud" to establish the requisite intent. Among the "badges of fraud" from which the courts have inferred intent include the following:

  a) inadequate or no consideration given for the transfer;

  b) transfers made to a family member or close relation;

  c) debtor's financial condition before and after the transfer;

  d) conveyance made while a suit is pending or threatened by creditors against the debtor;

  e) secret or concealed conveyance;

  f) debtor remains in possession, reserves the right to use or benefit, or deals with the property as his own.

*See generally,* 4 *Collier on Bankruptcy,* ¶ 548.02 at 548–39–46 (15th ed. 1988). A combination of the above circumstantial facts generally provides reasonable grounds to find the transfer was made with actual intent to hinder, delay or defraud creditors.

■ A review of the facts in the present case reveals the existence of a number of "badges of fraud." On the date of the transfer between debtor and Barbara Osbourne, debtor had been substantially indebted to Coplay. In fact, the transfer occurred shortly before Coplay filed suit against Osbourne in state court and at no time prior to the transfer did Osbourne notify Coplay of the transfer. Admittedly, the transfer was made to Barbara Osbourne, debtor's wife, for little or no consideration. Although Osbourne asserts that the transfer occurred as a proposed property settlement, he continued to reside at the residence.

■ Osbourne contends however, that the transfer did not defraud any creditor because the property was exempt from his creditors under Kentucky property law. Osbourne further states that under Kentucky law a conveyance or devise of property to a husband and wife creates a tenancy by the entirety, which is indivisible without the consent of both parties. Furthermore, entireties property is not subject to execution by individual creditors of only one of the tenants. *Hoffmann v. Newell,* 249 Ky. 270, 60 S.W.2d 607 (Ky.1932); *Barton v. Hudson,* 560 S.W.2d 20 (Ky.Ct.App. 1978). Since, only Mr. Osbourne filed bankruptcy and Barbara Osborne remained a non-debtor spouse, Osbourne contends that the marital property was immune from

Mr. Osbourne's creditors. Therefore the property was exempt from the bankruptcy process. In support of this position, debtor cites 11 U.S.C. § 522 which provides that an individual debtor may exempt his interest as a tenant by the entirety or joint tenant from property of the estate if it is exempt under applicable nonbankruptcy law.

Debtor's argument is not convincing. The court in *Hoffmann v. Newell, supra,* 60 S.W.2d at 613 clearly provided that a husband's entireties interest may be sold by a court of equity to satisfy creditors provided the sale does not affect the non-party spouse's interest in the property. Moreover, K.R.S. 426.190 illustrates that a debtor's survivorship interest is not immune from process in that:

> [l]and to which the defendant has a legal or equitable title in fee, for life or for a term, whether in possession, reversion or remainder, or in which the defendant has a contingent interest or a contingent remainder or a defeasible fee, may be taken and sold under execution.

Ky.Rev.Stat.Ann. 426.190. Accordingly, debtor's argument must fail because his interest in the estate is not exempt under applicable nonbankruptcy law.[2]

Based upon our review of the undisputed facts, we conclude that the transfer of property by the debtor to his spouse for no consideration, while remaining in possession of property and at a time that his financial condition was questionable clearly indicates a scheme to defraud creditors. Accordingly the Trustee may avoid the transfer under 11 U.S.C. § 548.

---

**2.** Debtor's argument is immaterial to the issue of fraudulent conveyance pursuant to 11 U.S.C. § 548. However, it is an important consideration as to whether the Trustee may sell the property once the transfer is set aside. Nevertheless, the sale of the property is not before the court and we shall reserve that question for another day.