H. A. PHILLIPS, Trustee in Bankruptcy,
Appellant, Appellee,

v.

Joe R. WIER and Lucien Hugh Cullen,
et al., Appellees, Appellants.

Joe R. WIER and Lucien Hugh Cullen,
Appellants, Appellees,

v.

H. A. PHILLIPS, Trustee in Bankruptcy,
Appellee, Appellant.

No. 20601.

United States Court of Appeals
Fifth Circuit.

Feb. 20, 1964.

Rehearing Denied March 30, 1964.

Joel W. Cook, Houston, Tex., for appellant Phillips.

Thad Grundy, Hutcheson, Taliaferro & Hutcheson, Houston, Tex., for appellants Joe R. Wier and Lucien Hugh Cullen.

Dave McNeill, Jr., Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., for appellees East End State Bank and Cecil R. Haden.

Arthur L. Forbes, Houston, Tex., for appellee, Forbes.

Before TUTTLE, Chief Judge, and HUTCHESON and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

In this action H. A. Phillips, Trustee in Bankruptcy of Gulf States Hospital Supply, Inc., a Texas corporation, seeks to recover the claimed value of property allegedly acquired by Joe R. Wier, an officer and director of the bankrupt, in a fraudulent, indirect transfer from the bankrupt. Wier and Lucien Hugh Cullen, also an officer and director of the bankrupt, appeal the judgment of the trial court awarding $15,000 damages against them. The Trustee in turn appeals from the lower court's refusal to order the return of the property acquired by Wier and from the order dismissing the suit against defendants East End State Bank, Cecil R. Haden, and Arthur L. Forbes.

Defendant-appellee Bank loaned the bankrupt $100,000 on September 26, 1956, taking in return bankrupt's note plus a promise to pledge all its assets. This note was endorsed by Wier and Cullen and collaterally guaranteed by Haden. Among the assets to be pledged were an account receivable of $246,022.13 owing to the bankrupt from its subsidiary, Gulf States Hospital Supply, Inc., a Louisiana corporation, and 989 out of 1,000 shares of the capital stock of the Louisiana corporation. This pledge was accomplished April 26, 1957, by the written assignment of the note and stock to the bank.

On October 30, 1957, when the balance outstanding on the bankrupt's note, due December 1957, was $76,448.62, a meeting of the individual defendants and the president and an attorney of the Bank was held. At that meeting officers of the bankrupt told the Bank of the precarious financial position of the bankrupt and of a planned assignment for the benefit of creditors, which actually occurred two days later. The Bank thereupon foreclosed on the pledge and sold the note and capital stock of the Louisiana subsidiary to Wier for the amount owing on the note. In payment, Wier gave his personal note, endorsed by Cullen and collaterally guaranteed by Haden, and additionally pledged back the Louisiana subsidiary's note and stock. On November 26, 1957, the fears about the financial soundness of the bankrupt were realized when an involuntary petition was filed against it. An adjudication of bankruptcy followed on December 12, 1957.

In attacking this transaction the Trustee alleged that the pledge was part of a conspiracy on the part of the individual defendants to transfer all assets of the bankrupt to its Louisiana subsidiary in fraud of the bankrupt's creditors. It was also charged that the Bank violated its fiduciary duty to protect the bank-

rupt's interest. The trial court found that the Bank had merely exercised its legal right to foreclose, that defendants Haden and Forbes had not taken part in a conspiracy, but that Wier and Cullen had conspired and effected a fraudulent transfer of the bankrupt's property. Judgment against the two was entered for $15,000, the court's determination of the difference between the value of the note and stock received by Wier and the $76,448.62 note due from Wier to the Bank.

■ We agree with the findings of the trial court that, under the circumstances, the Bank acted within its rights and in a reasonable manner to protect its interests. The notes under which foreclosure proceeded contained provisos that in the events of a failure to supply additional collateral should the original become insufficient, or the occurrence of an act of insolvency, or the making of an assignment for the benefit of creditors, the Bank could proceed to sell the securities pledged. At the time of the sale the bankrupt was insolvent and preparing to make an assignment of its assets; the collateral had greatly depreciated in value.

■ Similarly, the court's holding that there was insufficient proof to hold defendants Forbes and Haden liable is warranted. Haden acted to protect the Bank, of which he was a director, from a large loss. The device used was the legitimate one of foreclosure and sale of the pledged assets. As to Forbes, he had no pecuniary interest in any of the challenged transactions; his function at the foreclosure meeting was the routine one of noting the balance due to Bank on the bankrupt's note. Moreover, for reasons which will shortly appear, Haden and Forbes could not have been part of a conspiracy bringing about a fraudulent transfer.

■■ Appellants Wier and Cullen attack the judgment against them on several points. First they assert that there was no "transfer" of the property of the bankrupt to Wier. A transfer of the note and stock by the bankrupt is admitted, but only to the Bank, either at the time of the promise to pledge or the time of the actual pledge. The Bankruptcy Act § 1, sub. 30, defines "transfer" to include every means, direct or indirect of disposing of property,[1] and the Trustee urges that there was in this case an indirect transfer from the bankrupt through the pledge, foreclosure, and sale at the Bank. We think there was clearly a transfer under this definition; the property passed from the bankrupt by pledge. In the contemplation of the statute, Bankruptcy Act § 67, sub. d(5), 11 U.S.C.A. § 107, sub. d(5), the transfer would be deemed to have been made April 26, 1957, because at that time the assignment of the stock and note so far perfected the transfer that no bona fide purchaser from the bankrupt could thereafter have acquired any rights in the property transferred superior to the rights of the Bank.

Although there was a transfer, we cannot sustain the ruling that this transfer gave rise to any liability on the part of Wier and Cullen. Neither the findings made from the bench, Record, pp. 390–95, nor the final judgment, Record, pp. 430–32, indicate what section of the Act the judgment is based on; the trial judge merely stated that the acts of Wier and Cullen "were such as were contemplated by the statute to be set aside." Record, p. 392. The Trustee suggests, on appeal, that the appropriate sections are 67, sub. d(2) (d), 11 U.S.C.A. § 107, sub. d(2)

---

1. " 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise * * *." Bankruptcy Act § 1, sub. 30, 11 U.S.C.A. § 1, sub. 30.

(d), and 70, sub. e 1 & 2, 11 U.S.C.A. § 110, sub. e 1 & 2.

The ruling cannot be upheld on the basis of section 67, sub. d(2) (d), which requires a finding of actual fraud.[2] The trial judge made no finding that the transfer of the stock and note was made with an actual fraudulent intent. His statement that Wier and Cullen did "conspire to get the sole control of the Louisiana corporation away from the Texas corporation," Record, p. 391, is not equivalent to a finding of actual intent to defraud creditors. Had he found that intent he would have been required by the Bankruptcy Act § 67, sub. d(6) 11 U.S.C.A. § 107, sub. d(6), to hold Wier and Cullen for the full value of the property transferred and not just the excess of its value over the consideration paid, as pointed out by the Trustee.

In any case, we are satisfied that the Trustee has not carried his burden of proof by showing the actual intent to defraud by "clear and convincing evidence." See Lackawanna Pants Mfg. Co. v. Wiseman, 133 F.2d 482 (6th Cir. 1943); Equitable Life Assur, Soc. v. Johnson, 81 F.2d 543 (6th Cir. 1936); 4 Collier, Bankruptcy ¶ 67.43, at 450–52 & n. 1. There seems to be no serious challenge to the transaction in which the note and the stock were pledged as security for a loan of $97,500 from the Bank. That this was a fair consideration for the pledge of the note and stock is apparent from the subsequent precipitous decline in value of the note and stock to a valuation found by the trial judge to be about $91,000. Furthermore, even if we accept the Trustee's argument that the bankrupt had a property interest in the security after it was pledged, and hence that there was a transfer at the time of the foreclosure, the evidence is insufficient to show fraud at that time. The actions of Wier and Cullen show an attempt by them to salvage two failing companies by the application of their own personal resources, credit, and energies. The transactions between the two companies were normal ones following the pattern of previous dealings between the bankrupt and its subsidiary.

The case at bar is readily distinguishable from United Towing Co. v. Phillips, 242 F.2d 627 (5th Cir.) cert. denied, 355 U.S. 861, 78 S.Ct. 93, 2 L.Ed.2d 68 (1957), which the Trustee cites for the proposition that actual fraud can be found where juggling of assets between controlled corporations is done with the motive of "skimming the cream into another jar out of reach of creditors." There, a purported pledge of stock to secure a debt between two corporations controlled by the same individuals was found to be invalid where it was done by a director moving a stock certificate from the file of one corporation to the file of the other. Here, there was a valid pledge of the stock and note to a disinterested third party, the Bank. The facts that the relations between the parties were amicable and that Wier and Cullen were frank in disclosing the impending financial doom of the bankrupt does not show that the dealings between them and the Bank were something less than at arm's length. Nor do the circumstances of the transaction—i. e. the Bank's foreclosure and crediting the full amount of the debt at the foreclosure sale thereby discharging the endorsement of Wier and Cullen—suffice to prove that they joined the Bank in a fraud. This is not enough to satisfy the requirement of actual intent to defraud. See Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 831 (5th Cir. 1959), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L. Ed.2d 877 (1960).

The Trustee also asserts that the judgment below may be sustained as set-

2. "(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent * * * (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors." 11 U.S.C.A. § 107, sub. d(2).

**372**

ting aside a transfer on the authority of the Bankruptcy Act § 70, sub. e(1), 11 U.S.C.A. § 110, sub. e(1), holding void any transfer which is voidable under State law by any creditor having a claim provable under this title. The State law invoked is Vernon's Tex.Civ.Stat.Ann. art. 3996 voiding every transfer suffered with intent to delay, hinder, or defraud creditors. We do not consider the application of this statute, however, because there has been no finding by the trial court of any facts that would satisfy the Texas statute.

The judgment is therefore affirmed on the appeal of Phillips, Trustee, and reversed on the appeal of Wier and Cullen.