**In the Matter of JACKSON SOUND STUDIOS, INC., Bankrupt Mrs. Elizabeth Mitchell, Appellant,**

v.

**J. A. TRAVIS, Trustee, Appellee.**

**No. 72-3238**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409.

504

Robert G. Nichols, Jackson, Miss., for Mitchell.

John R. Countiss, III, Jackson, Miss., for Jackson Sound.

J. A. Travis, Jr., Jackson, Miss., for appellee.

Before THORNBERRY, DYER and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal is from an order of the district court affirming the determination of a referee in bankruptcy denying appellant's petition to reclaim certain assets from the bankruptcy estate of Jackson Sound Studios, Inc., a Mississippi corporation.

Mrs. Elizabeth Mitchell, the claimant and appellant, was the principal financial supporter of her son Fred's corporate enterprise, the bankrupt. Appellant provided her son with some $53,000 with which to obtain certain electronic equipment necessary for his planned sound recording business. This equipment has become the subject of the instant reclamation proceeding. The equipment was purchased and delivered to Fred Mitchell three weeks before the incorporation of Jackson Sound Studios, Inc. Fred Mitchell became president and a principal shareholder of the bankrupt.

Jackson Sound Studios, Inc., executed a security agreement and financing statement covering the equipment in favor of Mrs. Mitchell in September 1969. The security interest arising, however, was unperfected until twenty-two months later by the filing of an adequate financing statement when bankrupt was known to be insolvent. A voluntary petition in bankruptcy was filed by Jackson Sound Studios, Inc., on February 29, 1972, less than eight months after the perfection by filing of the security interest in bankrupt's most significant assets.

Appellant, asserting the validity of the security interest perfected by the delayed filing, instituted the instant reclamation proceeding which was referred to a referee in bankruptcy. The referee after hearing found the security agreement between bankrupt and appellant invalid under Mississippi corporation law. The referee's findings in pertinent part were as follows:

"9. There are no corporate records which reflect any agreement by the bankrupt to assume any obligations in connection with the transfer of this equipment from Mrs. Mitchell to the bankrupt, nor are there any corporate records which reflect that the Board of Directors authorized or attempted to authorize the execution of the collateral note and security agreement until a purported meeting on May 31, 1971.

"10. The Court finds as a fact that the equipment comprised all or substantially all of the assets of the bankrupt on September 1, 1969, and that the attempt to give a security interest in those assets was an action taken other than in the usual regular course of the business of the bankrupt. Section 5309–161 of the Mississippi Code of 1942 requires that if a corporation attempts to mortgage or dispose of its assets in the regular and usual course of its business, the disposition must be authorized by its Board of Direc-

tors. The Court finds as a fact that the Board of Directors of the bankrupt did not authorize the execution of the note and security agreement on or about September 1, 1969, nor any time thereafter.

"11. As indicated in the preceding findings, the Court has found as a fact that the attempt on or about September 1, 1969, to convey the security interest in the equipment was an act of the bankrupt in other than the ordinary routine course of its business. Section 5309–162 of the Mississippi Code requires that in such cases certain steps be taken which include approval by the Board of Directors, written notice to the stockholders, and ratification of the action of the Board by the stockholders. The Court finds as a fact that Section 162 of the Mississippi Code of 1942 as amended was violated in this regard. No attempt was made to follow the requirements of this section.

"12. The Court finds as a fact that the attempt by the Board of Directors in May of 1971 to validate the action of the petitioner's son, Fred Mitchell, in September of 1969 was void and ineffectual for the reason that the stockholders had that day elected only two (2) members to the Board of Directors and that the Board of Directors, on May 31, 1971, could not legally act in such a way as to bind the corporation or validate prior unauthorized acts of its President. Section 5309–72 of the Mississippi Code of 1942 requires that the Board of Directors of a corporation shall not be less than three (3). The Court finds therefore that the purported action of the Board on May 31, 1971, was ineffectual and void."

The trustee's claim to the assets was sustained by operation of Section 70 of the Bankruptcy Act, 11 U.S.C. § 110. Additionally, the referee concluded that if in the event the corporate ratification issue was determined in Mrs. Mitchell's favor, the deferred perfection of the security interest constituted a transfer within one year of the filing of the petition in bankruptcy and was void as a fraudulent transfer under Section 67d(2) of the Act, 11 U.S.C. § 107.

On appeal Mrs. Mitchell's principal attack is not directed to the validity of the corporate ratification of its promoter's act, but to the validity of the security agreement and its delayed perfection under the Uniform Commercial Code. We affirm the district court.

■■ It should be self-evident that in a petition for reclamation of property held by a trustee in bankruptcy a claimant must demonstrate that the trustee did not become vested with title to the property by operation of Section 70. This may be done by demonstrating that the bankrupt did not have title to be vested in the trustee, as was here attempted by asserting the presence of a valid perfected security interest in the property. If the claimant is unable to carry this burden, the trustee need do nothing more than assert his "universal successorship" to the property held by the bankrupt at the time of the filing of the petition in bankruptcy. 11 U.S.C. § 110. Aviation Instruments, Inc. v. Cameron, 350 F.2d 959 (5th Cir., 1965); 4A Collier on Bankruptcy, ¶ 70.39. It is only if the claimant has established a claim to property that the burden of demonstrating that the property should remain in the estate must be shouldered by the trustee. Here, since the transaction in question occurred more than four months before the filing of the petition in bankruptcy, had appellant carried her burden of establishing a valid corporate ratification of the security agreement, the trustee would have had the burden of establishing that the ratification was a transfer as defined by the Act, § 1(30); that the act of transfer is deemed to have been made within one year of the filing of the petition in bankruptcy, § 67d(5), and that the transfer was voidable by the trustee as fraudulent within the purview of §

67d(2)(a), (b), (c) or (d). 4A Collier, ¶ 67.34.[1]

Section 67d(2) provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

■ For Section 67d(2) to be applicable we must find that, having delayed perfection, the ratification of a security interest was a transfer deemed to have occurred within one year of the date of the bankruptcy petition. Section 1(30) of the Act defines "transfer" as:

" 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor."

The ratification of a security interest falls well within this embracive term. In re King Porter Co., 446 F.2d 722 (5th Cir., 1971).

■ A transfer is deemed by § 67d(5) to have been made when it has been perfected as against a bona fide purchaser from the debtor. Phillips v. Wier, 328 F.2d 368 (5th Cir., 1964). Thus, § 67d(5) looks to state law concept of perfection—here, those of the UCC, §§ 9–302, 9–303, 9–401. But there is no doubt that under the Uniform Commercial Code had Mrs. Mitchell's agreement been ratified, her security interest would have been perfected as against a bona fide purchaser on the filing of the financing statement. Perfection, however, did not occur until within one year of the date of the filing of the petition in bankruptcy, which is within the reach of § 67d(2) as defined by § 67d(5). The question thus becomes whether the elements of a fraudulent conveyance under § 67d(2)(a) or (b) or (c) or (d) have been made out by the trustee. Here, the referee's fact findings support not only the conclusion that the invalid corporate ratification failed to attach appellant's security interest to the property, but also support his conclusion that a fraudulent transfer, voidable by § 67d(2), was attempted by appellant's perfection in the teeth of the bankruptcy.

16. The Court finds as a fact that the petitioner, and her son, who is also President of the bankrupt, knew in May and June of 1971, that there were creditors who were not being paid and that the bankrupt was unable to pay such creditors, and that, if the

---

1. Section 70e has not been raised by the trustee and we shall not consider its application to the case at bar.

financing statement were valid, that creditors would have no practical recourse for the collection of their debts from the bankrupt. The Court finds as a fact that on or about May 31, 1971, and June 23 and 24, 1971, that Mrs. Mitchell, the petitioner herein, knew that if her financing statement were held to be valid, that she would thereby have a much larger portion of the debt allegedly due her by the bankrupt covered by collateral than would any other creditor.

The judgment of the district court affirming the referee's decision is affirmed.