LOGAN, Circuit Judge.
 

 This appeal is from a judgment of the district court affirming a bankruptcy judge’s order that denied appellant Charles A. May’s claim of ownership for items of personal property in possession of the trustee.
 

 The bankrupt is White House Decorating Co., Inc., a remodeling and decorating company, which was adjudged bankrupt on June 3, 1977. The trustee filed a complaint in bankruptcy court seeking permission to sell items of personal property found on the premises of the corporation. Appellant May, president and owner (with his family) of the bankrupt corporation, filed an answer claiming personal ownership of much of the property. The bankruptcy judge held two hearings and found against May on all but a few of the items. On appeal the district court affirmed, concluding the bankruptcy judge’s findings that May had not met his burden of proof on ownership was not clearly erroneous. The court’s order discusses only the proof concerning the three boats — a 1964 Chris Craft Holiday (Holiday), a 1967 Trojan Cruiser (Cruiser), and a 1974 Chris Craft Jet (Jet) — which had been the subject of most of the evidence and testimony.
 

 We agree that the decision with respect to all of the property except the boats is not clearly erroneous and therefore should not be overturned on appeal.
 
 See Potucek v. Cordelería Lourdes (In re Wilson),
 
 310 F.2d 527, 530 (10th Cir. 1962),
 
 cert. denied,
 
 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734 (1963). The only evidence of ownership of these other items was the testimony of May and his son. The bankruptcy judge found May to lack credibility, and this finding is to be given great weight.
 
 Allen v. Romero (In re Romero),
 
 535 F.2d 618, 622 (10th Cir. 1976). We cannot agree, however, with the decision denying May the boats.
 

 The following documentary evidence of May’s ownership of the boats was submitted to the bankruptcy judge: a 1977 renewal registration for each boat sent to May in his name and at his home address (boats do not have certificates of title like those required for automobiles, but are subject to registration, renewed annually, with the state motor vehicle department); can-celled personal checks showing May’s payment of $1,000 down on the Holiday (total cost was about $5,000), eight $195 payments on the Cruiser (total cost was about $12,-000),
 
 [1]
 
 $6,500 on the Jet (total cost was $8,391; May claims the cost was $6,500, but the bill of sale shows $8,391 with $6,500 as the balance); a personal financial statement dated June 25, 1972, showing May as owner of the Cruiser and the Holiday; May’s personal note with the United Bank of Aurora secured by the Cruiser; and the bill of sale, initial registration, and sales receipt for the Jet, all in May’s own name.
 

 The bankruptcy judge, although acknowledging this evidence, made two significant findings. First, he concluded that May had a total disregard for the truth, and the documents were of little value because they were based on May’s self-serving representations. Second, he believed May had disregarded the corporate entity. The judge expressed his suspicion that the funds used to pay for the boats had their source in the corporation. This concern was aggravated by May’s failure to produce a complete set of corporate records, which would have enabled the trustee to trace the funds. Comments in two different orders succinctly state his reasoning:
 

 The Court, after 15 months of listening to Charles A. May, at numerous times, just has no belief in statements that he makes. . ' . . He has a total disregard of truth.
 

 and,
 

 The main concern of this Court is not that the boats are titled to Charles A.
 
 *910
 
 May’s name, but the source of the funds to pay the same. When one has control of the books and checks, etc. of a corporation, it is easy to transfer funds to oneself and then pay those funds out and take title in your own name. As the Court stated before the credibility of Mr. May is quite low in its opinion.
 

 The judge, therefore, held that May had not met his burden of proof of ownership.
 

 The standard of review both at the district court and court of appeals level is whether the findings of the bankruptcy judge are clearly erroneous.
 
 Potucek v. Cordeleria Lourdes (In re
 
 Wilson), 310 F.2d 527, 530 (10th Cir. 1962),
 
 cert. denied,
 
 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734 (1963). Although we do not question the validity of the findings here, we can question the conclusions the bankruptcy judge drew from his findings.
 
 See Washington v. Houston Lumber Co.,
 
 310 F.2d 881, 883 (10th Cir. 1962). May has the burden of proving ownership, since he is claiming title against the-trustee in bankruptcy who is in possession.
 
 Alien v. Lokey,
 
 307 F.2d 353 (5th Cir. 1962).
 

 May’s credibility does not affect the nature of the documentary evidence, which itself is sufficient to meet his burden of proof. The documents, although partially based on May’s own representations and actions, came into being in the ordinary course of affairs and most of them long before the bankruptcy. They are, therefore, credible evidence.
 

 The registrations were in May’s name and contained his home address, not that of the corporation. Not all of the payments can be accounted for on the Cruiser and Holiday, but considering these boats were purchased in 1964 and 1967, ten years or more before this litigation, that is not surprising. The cost of the Jet, the most recent purchase, is accounted for by a personal check for almost all the purchase price, except for what appears to be a trade-in credit. Other evidence — the bill of sale, the financial statement, the personal secured note with the bank — shows that May consistently treated the boats as his own personal property. We are unsure what additional evidence of ownership May could have produced.
 

 The trustee has produced no evidence tending to contradict the purport of these documents.
 
 Cf. In re Lux’s Superette, Inc.,
 
 206 F.Supp. 368 (D.Pa.1962) (stockholder claimants failed to meet their burden; trustee had shown insurance on the property was in the corporation’s name, the corporation’s financial statement listed the property as an asset, and the property was used in the corporation’s business). The fact the bankruptcy judge considered May to be a liar does not make his unbelieved assertions affirmative proof of the opposite proposition. That the boats were stored on the bankrupt’s premises on the day the trustee took over is not persuasive; the boats were not used in the business, and it is consistent with personal ownership to store such items on the premises of a family-owned corporation.
 

 Both the bankruptcy judge and the district court were greatly influenced by the possibility that May misused corporate funds by taking money from the corporation to make these purchases or to pay boat expenses. But the source of the funds used to pay for the boats does not affect the ownership of the boats, absent a showing that title was intended to be held for the corporation or of a concealment giving false appearances to creditors. No such evidence was presented here. The owners of a closely-held corporation regularly take money from their corporations as salary, dividends or return of capital, and loans. Sometimes the “loan” process is so informal and extensive that the advances are treated by tax authorities as constructive dividends.
 
 See Dolese v. United States,
 
 605 F.2d 1146, (10th Cir. August 22, 1979). Occasionally the abuse of the corporate form is so great that the separate corporate existence is ignored entirely for tax purposes,
 
 see Pacific Development, Inc. v. United States,
 
 79-1 U.S.T.C. ¶ 9138 (D.D.C.1979), or to allow corporate creditors to reach personal assets of the shareholder.
 
 See, e. g., Zaist
 
 v.
 
 Olson,
 
 154 Conn. 563, 227 A.2d 552 (1967).
 
 But see Bartle v. Home Owners Coopera
 
 
 *911
 

 tive, Inc.,
 
 309 N.Y. 103, 127 N.E.2d 832 (1955). The bankruptcy court has equitable powers that can properly be used in particular circumstances to subordinate claims of shareholders seeking priority as creditors,
 
 see Pepper v. Litton,
 
 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939);
 
 In re Midtown Produce Terminal, Inc.,
 
 599 F.2d 389 (10th Cir. 1979), or to set aside a fraudulent conveyance under 11 U.S.C. § 107(d). But in this case no contention is made that the corporate form should be disregarded to allow creditors to reach May’s personal assets, or that the boat acquisitions were a fraud on creditors, nor is May claiming priority as a creditor of the bankrupt. Rather, the issue is whether May has met the burden of proof to show personal ownership of the boats. Once a claimant under a reclamation petition has established ownership, the burden shifts to the trustee to prove why the asset should remain in the bankrupt’s estate.
 
 Jackson Sound Studios, Inc. v. Travis,
 
 473 F.2d 503, 505 (5th Cir. 1973). Neither the trustee nor the judges treated this as anything more than a case of failure to prove ownership.
 

 The trustee was frustrated and may have been handicapped in presenting evidence because of the sketchy corporate records turned over to him. Failure to keep or turn over records can be a bar to a discharge in bankruptcy, 11 U.S.C. § 32(c), and can 4work against the bankrupt when the trustee has the burden of proof.
 
 See In re American Packers Exchange, Inc.,
 
 449 F.2d 1313 (1st Cir. 1971). But even though a bankruptcy court is a court of equity, equitable considerations do not negate ownership.
 
 See Colonial Trust Co. v. Goggin,
 
 230 F.2d 634 (9th Cir. 1955). If we were to permit ignoring uncontradicted documentary evidence of the sort introduced here, we fear we would be placing an impossible burden on claimants in bankruptcy cases.
 

 For the reasons stated, we reverse that part of the trial court’s judgment treating the three boats, and remand for further proceedings consistent herewith.
 

 McWILLIAMS, Circuit Judge, dissents.
 

 [1]
 

 . Twenty-one additional $195 payments on the Cruiser were presented at a hearing after the bankruptcy judge’s initial ruling against May, but were not admitted as evidence because May could have but failed to produce them at the first hearing.