In re ROBERTS, INC., Bankrupt.

Eugene ROBERTS, Plaintiff,

v.

Louis A. GEREMIA, Trustee, Defendant.

Bankruptcy No. 77–473.

United States Bankruptcy Court,
D. Rhode Island.

Nov. 30, 1981.

Walter R. Stone, Stone, Clifton & Clifton, Providence, R. I., for plaintiff.

Louis A. Geremia, trustee pro se, Quinn, Cuzzone, Geremia & Pennacchia, Providence, R. I., for defendant.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on: (1) the complaint of Eugene Roberts to reclaim $30,000 from the Trustee, (2) the Trustee's objection to Roberts' claims for $699.80 in wages (Claim No. 197) and for payment of a $13,676 loan (Claim No. 198), and (3) the Trustee's counterclaim for punitive damages.

Eugene Roberts, the Plaintiff in the present proceeding, was the president and sole shareholder of Roberts, Inc., which filed a petition under Chapter XI of the Bankruptcy Act on December 23, 1977. For a while the Chapter XI appeared to progress "normally," but on April 3, 1978, Roberts was arrested by agents of the Federal Bureau of Investigation as he left a bank, carrying a paper bag containing $243,000 in cash. On the same day F.B.I. agents seized an additional $147,000 in a safe deposit box owned by Roberts. These funds (which have since turned out to be corporate assets) were not disclosed in the then Debtor's schedules. Under these unusual circumstances, the corporation was adjudicated a bankrupt on April 24, 1978, and the Trustee began liquidating the estate.[1] Subsequently, Eugene Roberts was indicted by a Federal Grand Jury on fourteen counts of conspiracy, concealing corporate assets, removing evidence, offering a bribe, and obstructing justice. After testifying against a number of co-conspirators, Roberts pleaded guilty to several of the charges and received a jail sentence. He filed the instant complaint while serving time in a Federal penitentiary in Kentucky.

■ With respect to his claim for the return of $30,000, Roberts contends that he actually embezzled "only" $360,000 of the $390,000 seized by the F.B.I., and that the remaining $30,000 is his property. As to this, Roberts has the burden of proving title to any property he seeks to reclaim from the Trustee. *May v. Eckles (In re White House Decorating Co., Inc.)*, 607 F.2d 907

---

1. Approximately $650,000 has been collected by the Trustee, and general creditors have received an interim dividend of 30 percent.

(10th Cir. 1979); *Jackson Sound Studios, Inc. v. Travis*, 473 F.2d 503 (5th Cir. 1973).

Roberts attempts to prove ownership of the $30,000 in question through receipts and bank statements which, he asserts, establish his title to the assets in question. He offered a pair of savings account passbooks in evidence, indicating a withdrawal of $7,000 in 1973, and testified that other cash was found in pillow cases in his mother's apartment. (When his mother died in 1972, Roberts inherited all of her assets.) These monies, together with personal savings from other unidentified sources, allegedly create the fund of "approximately" $30,000. The money allegedly was placed in a safe deposit box and eventually commingled with the embezzled corporate funds. The Plaintiff further testified that his "frugal lifestyle" enabled him to save some of the money.

Since the documentary evidence does not even begin to substantiate Roberts' claim of ownership, the resolution of this issue depends on his truthfulness and veracity. Despite Roberts' assertion that he has "found the Lord" since his conviction and incarceration, I find his most recent testimony to be as incredible and unbelieveable as ever, and reject it in its entirety. Accordingly, I find as a fact and conclude as a matter of law that Roberts has no right or title to any of the cash in the possession of the Trustee, and said claim is denied.

I also reject the Plaintiff's claims against the estate for unpaid wages in the amount of $699.80, and for the balance of an alleged $13,676 loan, because no credible evidence has been presented concerning the details or substance of either claim.

But even if the proof as to these last two items were sufficient, in the circumstances of this case it would be unthinkable to permit Eugene Roberts to receive any payment on a par with other creditors, and it would be even more ludicrous to allow him a priority payment with respect to any part of the alleged wage claim. A bankruptcy court can equitably subordinate a creditor's claim where that creditor has breached a fiduciary duty resulting in detriment to other creditors, or where the claimant has committed an act of moral turpitude causing damage to other creditors. *In re W. T. Grant*, 4 B.R. 53, 74 (Bkrtcy.S.D.N.Y.1980).

As the sole stockholder, director, and manager of the Bankrupt, Roberts obviously owed a fiduciary duty to the company's creditors, see *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692 (5th Cir. 1977), and that duty was blatantly ignored when Roberts "skimmed" cash from daily proceeds, sold the corporation's inventory at below cost, and pocketed the proceeds. The embezzlement scheme was a direct cause of the insolvency and severely prejudiced the interests of creditors. There could hardly be a stronger argument for subordination, and in the extreme circumstances of this case, even if the claims in question were allowed, they should be and hereby are subordinated to the claims of general creditors. See 11 U.S.C.A.App. §§ 11 and 93.[2]

Accordingly, Eugene Roberts' complaint to reclaim the $30,000 is denied, and the Trustee's objection to the Plaintiff's claims for wages and payment of a loan is sustained. Finally, the Trustee's counterclaim for punitive damages is denied because he presented no evidence in support of that claim.

2. See also H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 359 and S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) 74, U.S.Code Cong. & Admin.News 1978, pp. 5787. The legislative history to 11 U.S.C. § 510(c) of the Bankruptcy Reform Act of 1978 outlines the equity powers of the Bankruptcy Court under the Bankruptcy Act.