**In re TURNER READY MIX COMPANY, INC., Debtor.**

**L.W. TURNER, Plaintiff,**

v.

**Milton G. GARRETT, as Trustee of the Estate of Turner Ready Mix Company, Inc., Defendant.**

**Bankruptcy No. 81–2473.**

**Adv. No. 81–0810.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Aug. 16, 1982.

---

**40**

Jesse W. Shotts, of Birmingham, Ala., representing plaintiff.

Milton G. Garrett, of Birmingham, Ala., representing the Trustee-Defendant.

### ORDER DETERMINING TRUSTEE EN-TITLED TO ASSETS OF ESTATE

GEORGE S. WRIGHT, Bankruptcy Judge.

L.W. Turner was the President, Director and principal stockholder of the debtor, Turner Ready Mix Co., Inc., who operated a concrete plant in Sumiton, Walker County, Alabama. L.W. Turner, individually, filed a complaint to recover two pieces of equipment claimed to be owned by him, and claimed not to be assets of the corporation. L.W. Turner claimed that he, individually, leased this loader and plant to the corporation. This question is of fact in that Milton G. Garrett, as Trustee, had possession of the equipment, namely: One Ross Rustler Model 110 Concrete Plant and One Fiat Allis

Model 545–B Loader. The Trustee sold the loader on June 16, 1981 to Sumiton Motors and Mobile Homes for $23,500.00 and the concrete plant to Wright Contracting Company for $55,000.00 on July 27, 1981; total proceeds $78,500.00—L.W. Turner now claims such proceeds. The issue before the Court is whether or not such loader and concrete plant is property of the estate under § 541(a) of the Bankruptcy Code.

Various discovery motions and motions for summary judgment were filed by the plaintiff and the defendant.

### FINDINGS OF FACT

1. *Initial Purchase.* On December 21, 1979, L.W. Turner "Firm name to be decided later" purchased the loader and plant from George Freeman and assumed the balance due under such contract to Crocker National Bank for the loader and Joe Money Machinery Company, Inc. for the concrete plant.

2. *Incorporation and Operation.* On February 13, 1980, Turner Ready Mix Company, Inc. was incorporated by filing incorporation papers with the Judge of Probate of Jefferson County, Alabama, Real Book 1879, Page 854. Turner Ready Mix Company, Inc. operated the concrete plant and used the loader in its concrete manufacturing business until it closed the plant on January 31, 1981.

3. *Payments on Concrete Plant.* (Defendant's Exhibit # 5) Corporate checks, signed by "L.W. Turner," were drawn on the corporate account of Turner Ready Mix Company, Inc., on the drawee, First Alabama Bank of Birmingham, payable to: Joe Money Machinery Company, Inc., totaling $30,564.79.[1]

4. *Payments on Loader.* (Defendant's Exhibit # 6) Corporate checks of Turner

| 1. | DATE | CHECK # | AMOUNT | NOTATION ON CHECK "For _____" |
|---|---|---|---|---|
| | 1/10/80 | 111 | $3,171.88 | Concrete Plant |
| | 2/21/80 | 182 | 3,171.88 | Ross Concrete Plant |
| | 3/27/80 | 237 | 3,171.88 | Plant |
| | 5/12/80 | 352 | 3,171.88 | Plant |
| | 5/27/80 | 388 | 3,171.88 | — |
| | 6/12/80 | 445 | 3,171.88 | — |

Ready Mix Company, Inc. were drawn on the First Alabama Bank of Birmingham payable to the Crocker National Bank for a total of $25,645.50.[2]

5. *Corporate U.S. Income Tax Return.* Turner Ready Mix Company, Inc.—1980 In- come Tax Return was due on November 15, 1980 and covered the fiscal year February 13, 1980 to August 31, 1980, Form 1120. This corporate income tax return shows that both the plant and loader were depreci- ated,[3] an investment tax credit was taken

| DATE | CHECK # | AMOUNT | NOTATION ON CHECK "For ____" |
|---|---|---|---|
| 7/30/80 | 559 | 3,171.88 | —— |
| 9/17/80 | 692 | 3,171.88 | R–6193 |
| 10/23/80 | 778 | 2,689.75 | Paid in full    Final Payment Inv. No. R–6290 |
| 12/16/80 | 891 | 2,500.00 | Down Payment ½ Plant |
| Total | | $30,564.79 | |

It is to be noted that Check #778 has "Paid in full—Final Payment" and that Check #891 has noted "Down Payment ½ Plant," which indicate that this is a corporate payment rather than payment on the lease. Further, it is to be noted that if this was owned by L. W. Turner, individually, then there should have been a lease payment for January 18, 1981, for which there was no evidence of such a payment.

2.

| DATE | CHECK # | AMOUNT | NOTATION ON CHECK "For ____" |
|---|---|---|---|
| 1/18/80 | 120 | $2,132.68 | December 27 Payment |
| 3/11/80 | 208 | 2,132.68 | Loader Pay #14 |
| 3/27/80 | 238 | 2,132.68 | Loader #15 |
| 4/11/80 | 281 | 2,132.68 | Payment No. 16 |
| 5/27/80 | 389 | 2,132.68 | #17 |
| 6/9/80 | 432 | 2,132.68 | #18 |
| 7/14/80 | 521 | 2,132.68 | — |
| 7/27/80 | 558 | 2,186.00 | 7/27/80 – Payment – $53.32 Late Charges |
| 9/12/80 | 687 | 2,132.68 | Payment No. 21 |
| 10/3/80 | 729 | 2,132.68 | Loader |
| 10/27/80 | 785 | 2,132.68 | 10/27/80 Payment #23 |
| 12/2/80 | 854 | 2,132.70 | Final Payment – Paid in full (Underlining for emphasis) |
| Total | | $25,645.50 | |

On Check #558, it is to be noted that $53.32 late charges were paid by the corporation, reinforcing the conclusion that this was a corporate asset rather than an individual asset in that the purported lease between L. W. Turner and Turner Ready Mix Company, Inc. has no provision for late charges. Further, Check #834 has the notation "Final Payment—Paid in Full" and there is total absence of a purported lease payment of 1/27/81, both of which reinforce the conclusion that this was a corporate asset rather than an individual asset.

3. (A) Depreciation Schedule

| Description | Date | Cost | Method | Life | This Year | Total |
|---|---|---|---|---|---|---|
| Machinery & Equipment | | | | | | |
| Plant | 2/13/80 | 59,695.18 | 150 DB | 15 | 3,485.70 | 3,485.70 |
| Loader | 2/13/80 | 45,492.38 | 150 DB | 8 | 4,975.73 | 4,975.73 |
| Rebuilt | 4/30/80 | 395.21 | | | 43.23 | 43.23 |
| Rollers | | 105,582.77 | | | 8,504.66 | 8,504.66 |

for this equipment,[4] the equipment was shown on the balance sheet of the corporation,[5] and further, there was shown only an indebtedness of $25,000.00 for a promissory note due to L.W. Turner, individually, and no indebtedness was shown for any lease obligations.[6]

6. *Amended Corporate U.S. Income Tax Return.* Turner Ready Mix Company, Inc. filed an amended 1980 U.S. Corporate Income Tax Return, Form 1120–X (Defendant's Exhibit # 4) (Amendment not dated but prepared November 21, 1980) which amended the depreciation on the plant to show an overstatement.[7]

7. *Alabama Domestic Corporation Income Tax Return.* Turner Ready Mix Company, Inc. filed an Amended Domestic Corporation Income Tax Return—2/13/80 to 8/31/80, prepared November 21, 1980, which shows a loss of ($6,369.00) (which shows the same loss as on the amended U.S. Corporate Income Tax Return 1120–X).

8. *Personal Property Tax Return for Turner Ready Mix Company, Inc.* L.W. Turner made a sworn return on December 29, 1980 that the loader and plant belonged to the corporation, Turner Ready Mix Company, Inc. in an assessment made personally, signed and sworn before the Tax Assessor, Walker County, Alabama.[8]

(C) Line 4, Page 2, SCH A – OTHER ASSETS

| | |
|---|---|
| Loader Depreciation | $5,019 |
| Plant Depreciation | 3,486 |

4. (B) Form 3466 Investment Tax Credit

| Line | Life Years | Cost or basis | Applicable percentage | Qualified Investment |
|---|---|---|---|---|
| (i) | 7 or more | $ 100,000 | 100% | $100,000 |

5. (D) Schedule L Balance Sheet

| | | |
|---|---|---|
| 9 | Buildings and other fixed depreciable assets | $114,783 |
| | (a) Less accumulated depreciation | 9,717 |
| | Total | $105,066 |
| 18 | Loans from stockholders | 25,000 |

6. (E) Schedule K

(2) Did any individual, partnership, estate or trust at the end of the taxable year own, directly, or indirectly, 50% or more of your voting stock?       <u>Yes</u>

x

(d) Enter highest amount owed by you to such owner during the year – $25,000

7. "Line 1.   Cost of plant overstated – depreciation
          (Schedule attached)                                       393"

8. "List of Property Returned by Turner Ready Mix Co., Inc.

| | |
|---|---|
| Office Equipment | $800 |
| Machinery | 27,180 |

9. *U.S. Individual Income Tax Return.* Due April 15, 1981, Bill and Mary Jane Turner, filed a U.S. Individual Income Tax Return—1980, which did *not* include depreciation, investment tax credit, lease income or any other indication of ownership of the plant and loader but only included interest income on a loan from stockholder of $25,000.00 from Turner Ready Mix, Inc.[9]

10. *Alabama Individual Income Tax Return.* On March 2, 1981, Ricky Brown of Brown & Associates, CPA, forwarded the Alabama Individual Income Tax Returns for 1980, Form 40–S, for Lonnie W. & Mary S. Turner, which did *not* include any depreciation on the plant and loader, no investment tax credit, and no lease income from the loader and plant from Turner Ready Mix Company, Inc.

11. *Chapter 7 Petition.* On April 21, 1981, Turner Ready Mix Company, Inc. filed a Chapter 7 petition wherein it did not list in its schedules a plant and loader, which is inconsistent with the evidence as set out above.

12. *Evidence.* The only documentary evidence to support the contention of L.W. Turner that he and not the corporation is the owner of the Ross Concrete Plant and Fiat Loader is a purported Lease Agreement (Exhibit B to Motion for Summary Judgment) between L.W. Turner as Lessor and Turner Ready Mix Co., Inc. as Lessee for a three-year lease of the Plant for $3,171.88 per month or a total of $114,187.68 and of the loader for $2,132.68 per month or a total of $76,776.48—a grand total of $190,964.16. It is to be noted that the lease has two deficiencies:

(a) It is *undated.*

L.W. Turner testified that the lease was executed between the time of the purchase of the Plant and Loader on December 21, 1979 and the date of incorporation on February 13, 1980.

---

OATH TO BE ADMINISTERED TO TAXPAYER: "I do solemnly swear that the list of property returned by me _____ said _____
  (If not his own property, here state the capacity in which he returns such property for assessment)
is a full and complete return of all the property owned by _____
  said _____
(Here state "me" if the property returned is his own property, state the name of the person, corporation or estate for whom the property is returned)

or in which _____
  (Here designate the owner for whom return is made)

had any interest whatever, the situs of which for taxation, or exemption, from taxation, is in this county. On the first of October of the present tax year, so help me God."

SIGN
HERE _____ /s/ L. W. Turner _____
        PERSON GIVING IN RETURN
Subscribed and sworn to before me this the __29__ day of __Dec, 1980__ I hereby certify that before taking the foregoing assessment list, I administered the oath required to be administered under Section 40, Title 51, Revenue Act 1940, to tax payer or agent, making this return and that I interrogated the said party as the law directs in regard to same.

_____
(Officer will sign here) (Give name and style of office here)
/s/ Newman Davis _____ , TAX ASSESSOR"

---

9. Schedule B – Interest Income

| Name of Payer | Amount |
| --- | --- |
| (H) Turner Ready Mix Co., Inc. | $2,688.00 |

(b) It is not signed by the corporation, Turner Ready Mix Co., Inc. § 8–9–2,[10] Code of Alabama 1975 is the Alabama Statute of Frauds which requires that the party charged (here Turner Ready Mix Company, Inc.) "subscribe such agreement." The contract merely had the following:

"Turner Ready Mix Co., Inc.

Lessee"

There is no signature of the corporation in a representative capacity. [E.g. Turner Ready Mix Co., Inc., By: L.W. Turner, as President] so that it is not a sufficient subscription to take the agreement out of the Statute of Frauds. See *Bunch v. Garner,* 208 Ala. 271, 94 So. 114 (1922); *Moss v. Gogle,* 267 Ala. 208, 101 So.2d 314 (1958); *Hammond v. Winchester,* 82 Ala. 470, 2 So. 892 (1887).

L.W. Turner's testimony is inconsistent with over eight separate sets of documents as set out above [11] as well as the testimony of his CPA, who prepared his corporate and individual income tax returns.

The Court finds that L.W. Turner's testimony is not worthy of belief.

### CONCLUSIONS OF LAW

 The weight of authority holds that the burden of proof is upon the claimant in a petition for reclamation of property held by the trustee in bankruptcy. *Jackson Sound Studios, Inc. v. Travis,* 473 F.2d 503, 507, 511 (10th Cir.1979); *In re Lux's Superette, Inc.,* 206 F.Supp. 368 (E.D.Pa.1962).

 In a very similar case, *In re Lux's Superette, supra,* the District Court upheld the Referee's finding based upon similar facts wherein a purchase of certain fixtures was made prior to the formation of a later corporation and where the corporation thereafter treated the fixtures as its own. The District Court affirmed the Referee's

finding that the principal stockholders of the bankrupt corporation failed to carry their burden of showing title to the property. See also *In re B & P Distributors, Inc.,* 1 B.R. 426 (Bkrtcy.E.D.Pa.1979).

### CONCLUSION

It is the Court's opinion and the Court so finds that the claimant, L.W. Turner, individually, as principal stockholder of Turner Ready Mix Company, Inc., has failed to carry his burden of proving ownership of the disputed property and that the Trustee is entitled to same under § 541(a)(1). A separate judgment will be entered in accordance with this opinion.

---

**10.** In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:

(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof;
. . . .

**11.** Findings of Fact, Paragraphs 3–10.