In re TELEMARK MANAGEMENT COMPANY, INC., the Telemark Company, Inc., Telemark Land Company, Inc., Historyland, Incorporated, Thaw, Inc., Wisconsin corporations, d/b/a Telemark Enterprises, Debtors.

Lawrence KAISER, as Trustee of the Estates of Telemark Management Company, Inc.; The Telemark Company, Inc.; Telemark Land Company, Inc.; Historyland, Incorporated; and Thaw, Inc., Plaintiff/Appellee,

v.

Sheila WISE and Anthony Wise, d/b/a Anthony Wise Enterprises, d/b/a AWE, and American Classic Competitions, Inc., Defendants/Appellants.

Bankruptcy Nos. EF7–81–00747 to EF7–81–00751.

United States District Court, W.D. Wisconsin.

March 29, 1985.

---

Robins, Zelle, Larson & Kaplan, Stephen H. Cohen, Minneapolis, Minn., for plaintiff/appellee.

Mark R. Anfinson, Minneapolis, Minn., for defendants/appellants.

## ORDER

SHABAZ, District Judge.

Before the Court are two appeals previously ordered consolidated.

The first, by Sheila Wise and Anthony Wise, d/b/a Anthony Wise Enterprises, d/b/a AWE and American Classic Competitions, Inc., from that judgment entered on October 9, 1984 by the Bankruptcy Court for the Western District of Wisconsin, the Hon. William H. Frawley presiding, declaring certain assets to be a part of the debtors' estate. 43 B.R. 579 (1984)

The second appeal is from the judgment of the Bankruptcy Court enjoining these same appellants from appropriating, interfering or unfairly competing with the 1985 American Birkebeiner.

Several briefing schedules were ordered, the last of which, at appellants' request, directed that their reply brief be filed not later than March 25, 1985. It has not been filed, nor have the appellants in their opening memorandum addressed themselves to the second appeal which, of course, must be dismissed for failure to prosecute.

Briefly stated, the debtor Telemark Enterprises consists of five corporations: Telemark Management Company, Inc., The Telemark Company, Inc., Telemark Land Company, Inc., Historyland, Incorporated, and THAW, Inc. The principal appellant, Anthony Wise, is the founder, sole shareholder, president and chief executive officer of debtor. Mr. Wise originally incorporated Telemark in 1955 and has dedicated 37 years of his life to this most significant

venture, which originated in 1947 with a ski tow and hill. The appellants pursue on appeal those same claims that they pursued at the trial in this matter which was held before Judge Frawley on September 17, 18 and 20, 1984.

It is undisputed by all of the parties that findings of the Bankruptcy Court may not be set aside unless clearly erroneous, giving due regard to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.

> This rule applies to all reasonable inferences of the trial judge, for it is for him to determine the propriety of the inferences and conclusions to be drawn. His is the primary function of finding the facts and choosing from amongst conflicting factual inferences those which he considers most reasonable. Even where there is no dispute about the facts, if different reasonable inferences may be fairly drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous.

*Central Ry. Signal Co. v. Longden,* 194 F.2d 310 (7th Cir.1952).

This Court recognizes its standard of review, which is to determine whether the findings of the Bankruptcy Judge are clearly erroneous. At the outset, let it be stated that this Court does not question the validity of the findings in any way. Nor does it appear from the appeal which has been filed in this matter that a contest has arisen as it concerns the findings of fact.

This Court has examined in detail the record submitted in this appeal, and after such examination finds nothing that would justify it in holding that the findings are erroneous.

Although this Court does not question the validity of the findings, it does question certain conclusions the Bankruptcy Judge drew from his findings, which conclusions, if allowed to stand, would in certain instances duplicate the obligation of the debtors.

Each claim of the appellants on appeal will be addressed separately in the order specified by the judgment, those claims being as follows:

■ 1. That Anthony Wise is indebted to Telemark Enterprises in an amount of $567,800, and judgment shall issue in favor of Telemark Enterprises and against Anthony Wise in said amount.

An examination of the entire record, to particularly include the testimony of Frederick Vortanz, the accounting manager and comptroller for Telemark, and the testimony of Anthony Wise, reveals without dispute that Anthony Wise, during the debtors' existence, received draws in excess of his salary in the amount of $567,800. Wise admitted to the signing of at least three notes totaling $567,800 for that excess.

A portion of this excess, however, appears to have been expended upon the purchase, operation, and maintenance (to include real estate taxes) of those four parcels of land owned by Anthony and Sheila Wise which underlie Historyland. In light of Telemark ownership of this real estate by virtue of estoppel and constructive trust, as will be later discussed in this opinion, an appropriate reduction of the $567,800 debt for purchase, operational and maintenance expenses is in order.

■ 2. That the American Birkebeiner is an asset of Telemark Enterprises, which has the exclusive right to use the names of American Birkebeiner, Birkebeiner, and Birke, and to promote, operate and receive all revenue from this event, Anthony Wise to deliver all funds received for the 1985 event.

This internationally-known ski event, which attracts in excess of 8,000 participants annually, was originated in 1973. It was the idea, vision, and creation of Anthony Wise in his corporate capacity as officer, employee, principal shareholder, and chief operating officer of Telemark. Throughout the years from its inception it was financed, operated, and promoted by Telemark. Its receipts were paid to Telemark, and its expenses were paid by Telemark. It is, without question, an asset of Tele-

mark and has always been held out by Anthony Wise as a Telemark event.

As in analogous circumstances where the chief executive officer had a duty to pursue a Navy contract, Wise,

> owed an obligation to plaintiff to develop the opportunity for it and in its behalf, and to refrain from doing anything that might work injury to his beneficiary or deprive it of profit or advantage which his skill, knowledge and ability might personally bring to it or enable it to realize in the reasonable exercise of its power. *Pepper v. Litton,* 308 U.S. 295, 311, 60 S.Ct. 238, 84 L.Ed. 281.

\*　　\*　　\*　　\*　　\*　　\*

> It may be that in failing to make such a disclosure, he was not guilty of bad faith, but he failed to realize and discharge his duties in the premises and, on the contrary, wrongfully assumed that, as the directing head of plaintiff corporation, he had a right to take the opportunity himself without informing those whom he was serving, the board of directors. This, he was not permitted to do. "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance." (citations omitted.)

*Central Ry. Signal Co. v. Longden, supra.*

Finally, there is absolutely no evidence whatsoever to support the claim of appellants that Anthony Wise is entitled to a franchise for this event.

3. That the Lumberjack World Championship is an asset of Telemark Enterprises, which has the exclusive right to use the names, "Lumberjack World Championship" and "Lumberjack Days" and to promote, operate and receive all revenues from this event.

In their only brief filed with this Court, appellants have now withdrawn this claim, agreeing that the evidence supports the conclusion that the Lumberjack World Championship event has no separate existence, and is the property of Historyland.

4. That the disputed items of personal property, to include 305 tagged items and $12,367.16 removed from Telemark, are assets of the debtor and should be returned by the constructive trustee, Anthony Wise.

The defendants have failed in any way to meet their burden of establishing ownership to the disputed property. The specific items were used in the two special events promoted by Telemark (Birke and Lumberjack) and were further depreciated on the tax returns of Telemark. The further undisputed testimony of Vortanz places at least $12,100 in cash in the hands of Anthony Wise since the commencement of Chapter 7 proceedings in May 1984. He literally took the money from the debtor without any authority whatsoever.

§ 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Although appellants cite *In Re White House Decorating Co., Inc.,* 607 F.2d 907 (10th Cir.1979) to justify their position, nonetheless contrary to appellants' belief, they have not met their burden of proof of ownership of the personalty and the $12,-367.16. Accordingly, the trustee need not produce evidence to contradict a burden which has never been met.

As in *In Re Turner Ready Mix Co., Inc.,* 25 B.R. 39 (1982), Anthony Wise, the principal stockholder of Telemark, has failed to carry his burden of showing title to the property.

There are, of course, as the Bankruptcy Judge has indicated, several of the 305 ticketed items which are to be delivered by the trustee to the State Historical Society of Wisconsin, and reference is made to those items in defendants' Exhibit 5. The

Court believes that the instruction of the Bankruptcy Judge is sufficient to accomplish the return of those items to the Society without this Court amending his directive.

5. That all real property underlying Historyland is an asset of Telemark Enterprises, and title to those parcels of real estate held by the constructive trustee Anthony Wise are divested from him and Sheila Wise and vested in Telemark Enterprises.

It is undisputed that the four parcels set forth in Exhibit B attached to the Bankruptcy Court judgment are held in the names of Anthony Wise and Sheila Wise, and have been so held, as best this Court can determine, as follows:

1. All that part of the Southwest ¼ of the Northeast ¼ of Section 27–41–9. From Barbara Wise Norman by Scipio N. Wise, her attorney-in-fact, to Anthony Wise, pursuant to land contract dated January 3, 1966, in the original amount of $10,600.
2. The West 350 feet of the Southeast ¼ from Wise Bros. Land Co., Inc. to Anthony Wise, pursuant to land contract dated January 3, 1966, in the original amount of $7,500.
3. The East 276 feet from Meredith C. Kephart and Myrtle T. Kephart, his wife, to Anthony Wise and Sheila Wise, as husband and wife, as joint tenants, pursuant to Warranty Deed dated January 13, 1965, which appears to be in the original amount of $10,000, and that additional parcel from the Kepharts to Anthony Wise and Mary Sheila Wise, husband and wife, as joint tenants, pursuant to Warranty Deed dated November 12, 1963, for which there appears to be from the documentary revenue stamps affixed thereto in the original amount of $5,000.

It would appear that an original outlay or investment was made for these parcels in the original amount of $33,100.

Appellants have, indeed, met their burden of ownership. There has been no evidence produced contradicting personal ownership of these lands by Anthony and Sheila Wise.

The burden then shifts to the trustee to prove why the lands should be placed in the debtors' estate. *In Re White House, supra.*

It is further undisputed that Telemark improved these lands, paid for a part of them, and maintained them, all with Telemark funds. They were also held out to creditors by Telemark and Anthony Wise as lands owned by Telemark. The corporate entity also used the lands in their business ventures, and except for the conveyances referred to herein, the appellants Anthony and Sheila Wise never treated the lands as their own.

There is no question that the trustee has a substantial equitable interest in those lands which underlie Historyland.

Although Anthony Wise testified he was dealing with sophisticated creditors who knew of his ownership, there is nothing in the record to so indicate other than the less-than-sophisticated argument of Wise that after the failure of reorganization proceedings he decided at the eleventh hour to make a claim for these parcels of land: lands from which he had never received income, lands which he had never leased to Telemark, nor received income from Telemark for their use throughout the entire relationship.

*In Re B & P Distributors, Inc.*, 1 B.R. 426 (1979), the Court had no difficulty in determining that a debtor who made all payments on and retained control of an automobile purchased for his benefit was sufficient to prove that he was the true owner, despite the fact that the title of the vehicle was registered in his wife's name.

A constructive trust will be imposed whenever necessary to satisfy equity. This includes fraud, actual or constructive, an abuse of confidence, or any form of questionable conduct which allows a party to enjoy property which, in equity and good conscience, he should not enjoy.

*       *       *       *       *       *

Directors of corporations are fiduciaries bound to the strictest good faith in caring for and managing its property. Their paramount duty is to the corporation and their personal pecuniary interests are subordinate to this paramount duty.

*In Re Tufts Electronics, Inc.*, 34 B.R. 455 (Bkrtcy, 1983).

Substantial authority exists for the creation of a constructive trust.

There is also sufficient authority to hold that the trustee is entitled to these lands under the doctrine of estoppel. In what appears to be a leading Wisconsin case, then Circuit Judge Beilfuss was affirmed when he decided that "by his conduct a corporate officer is estopped from asserting personal ownership of that which he held out as an asset of the corporation over the years." *Bank of Mauston v. Marachowsky*, 258 Wis. 599, 46 N.W.2d 863 (1951).

There is no question that both creditors and the court relied on those representations of Telemark and Anthony Wise that the underlying lands were those of the debtor. This Court is of the opinion that the elements of equitable estoppel have, indeed, been established.

Equitable estoppel is a doctrine adjusting the relative rights of parties based upon consideration of justice and good conscience. Pomeroy has defined equitable estoppel as having the effect of absolutely precluding a party, both at law and equity

[f]rom asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party. (citations omitted.)

*United States v. Georgia-Pacific Company*, 421 F.2d 92 (9th Cir.1970).

Anthony Wise commingled this real estate with the assets of the corporation, and allowed debtor to improve, maintain and operate the events which were held on those lands. He is indeed a constructive trustee of those lands owned by Wise and his wife. He is equitably estopped from withholding those lands from the debtor, and has no reasonable argument to convince this Court otherwise.

The trustee, however, is entitled only to an undivided share of the property equivalent to the proportion which his funds bore to the total funds. *Provencher v. Berman*, 699 F.2d 568, 570 (1st Cir.1983). To the degree that Martin paid for any improvements upon the property in question, he may have a pre-petition claim. To the extent he has paid any expenses ... he may have an administrative claim.

*Tufts Electronics.*

█ In addition to the doctrine of constructive trust and equitable estoppel, the appellants are further held liable to Telemark Enterprises for those reasons set forth by the Court in *Quad/Graphics, Inc. v. Fass*, 548 F.Supp. 966 (E.D.Wis.1982):

In determining whether to pierce the corporate veil, the court must decide whether the corporation operated only as an alter ego of the individual controlling it. If it appears that a person is merely dealing with his own property through a corporation just as if he were dealing with it individually, and if "applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim," the court may choose to disregard the corporate entity if such disregard would prevent an inequitable result.

As in *Quad/Graphics*, after such disregard of the corporate structure by Anthony Wise and his depletion of Telemark assets, it would be inequitable to limit the trustee's recovery to only those corporate assets

which Anthony Wise now chooses to relinquish.

The common-sense approach by which a similar situation was resolved in *Tufts* provides this Court with further guidance in the matter. There is no question that the lands are held by Anthony Wise as constructive trustee for Telemark; and the lands are, indeed, to be, and have been, the assets of Telemark.

This Court is of the opinion, however, that the original investment, if any, directly paid by Anthony Wise and his wife Sheila for those four parcels should be credited to them.

From that debt of $567,800 owed by Anthony Wise to Telemark, there shall be an offset representing his original monetary investment paid for the lands. Any interest upon that investment will, of course, be adjusted to offset that interest to which the trustee may be entitled on the entire $567,800 obligation remaining.

6. That the Cable, Wisconsin, liquor license held by Anthony Wise is an asset of Telemark Enterprises, the debtor being entitled to have all extra funds relating to this license directed to it by the constructive trustee Anthony Wise, and the license is vested in Telemark and divested from Anthony and Sheila Wise.

Until May 1984 there was never a claim made by Anthony Wise that he was in any way whatsoever entitled to the beverage receipts which flowed from the issuance of the liquor license. After the incorporation of Telemark, Wise purchased the liquor license from Wigwam for the benefit, use, and ownership of the corporation. As the agent of Telemark, he made application for this license and used it for the operation of the principal, Telemark Enterprises. He dealt with this license in his corporate capacity, and shuffled it from one entity to the other as he deemed appropriate for his own personal advantage.

Once again, Mr. Wise has failed to recognize his fiduciary relationship to his principal; his employer; the corporation which provided him and his family a livelihood since its inception.

All receipts from the sale of liquor were reported as income by Telemark, not by Anthony Wise. All expenses in the operation of beverage sales were paid by Telemark, and there is no question that the license itself was originally procured for the operation of Telemark Enterprises.

The claim of the appellants for the ownership of that license and the income generated by it is not only frivolous, but demeaning to those creditors who relied upon the entire Telemark operation for that credit which they extended.

Accordingly,

## ORDER

IT IS ORDERED that the judgment entered by the Bankruptcy Court on October 9, 1984 is AFFIRMED, except that the appellants are entitled to a reduction of the $567,800 judgment to be entered by the amounts charged to them for the purchase, maintenance and operation of the four parcels of land upon which Historyland is located, and for the original monetary payments which they may have made for those four parcels of land.

IT IS FURTHER ORDERED that the judgment of the Bankruptcy Court enjoining the appellants from appropriating, interfering or unfairly competing with the 1985 American Birkebeiner is AFFIRMED.

IT IS FURTHER ORDERED that this case is REMANDED to the Bankruptcy Court for those accounting procedures which may be necessary to implement this decision.